501 So.2d 358 (1987)
Ralph WALKER and Ralph Walker, Inc.
v.
Raymond BROWN, Jr., Raymond Brown, Sr., d/b/a Raymond Brown Trucking, et al.
No. 55789.
Supreme Court of Mississippi.
January 7, 1987.
Robert W. Camp, H.A. Courtney, Jackson, for appellant.
Trudy Ann Black, Gretna, La., Roger K. Doolittle, Jackson, for appellee.
Before WALKER, C.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the court:
Ralph Walker individually and Ralph Walker, Inc. appeal from a jury verdict holding them jointly liable with Valentine Truck Brokers, Inc. for the conversion of a refrigerated trailer. The adverse judgment in the Circuit Court of Rankin County held the trio liable for $5,000 actual damages and $50,000 punitive damages.
The original action was brought and tried against two additional defendants, but Victor Valentine and Robert Knipe, a dispatcher for Valentine Truck Brokers, Inc. were dismissed at the close of the evidence. Although judgment was rendered jointly against Valentine Truck Brokers, Inc. and Ralph Walker, Valentine has not appealed because it had gone out of business, and is now defunct and judgment proof, leaving Ralph Walker, Individually and Ralph Walker, Inc. as the only viable appellants in interest. Ralph Walker and Ralph Walker, Inc. appeal, assigning the following errors:
I.
THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II.
THE VERDICT OF THE JURY IN AWARDING $5,000.00 ACTUAL DAMAGES WAS AGAINST THE OVERWHELMING *359 WEIGHT OF THE EVIDENCE.
III.
THE TRIAL COURT ERRED IN GRANTING A PUNITIVE DAMAGE INSTRUCTION.
IV.
ANY AWARD OF PUNITIVE DAMAGES AGAINST APPELLANT, RALPH WALKER, WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND LAW.
V.
THE AWARD OF $50,000.00 punitive damages by the jury was excessive, against the overwhelming weight of the evidence, and evinced bias, prejudice and passion.

STATEMENT OF THE FACTS
On September 2, 1981, Raymond Brown, Jr. began hauling a perishable load of lettuce and celery from Salinas, California to destinations in Harrisburg, Pennsylvania and Bedford, Ohio. He only made it as far as Mississippi where his trailer containing the perishable load was taken. The trailer was returned after four to five days, but its detention formed the basis for this suit in conversion.
Raymond Brown, Jr., a Virginia resident, and his father, Raymond Brown, Sr., operated more or less as trucking partners. Brown, Sr. rented a refrigerator trailer under a lease/purchase agreement and had given the trailer to his son to make a living.
On September 2, 1981, the younger Brown was traveling with his wife and son when he learned through Valentine Truck Brokers, Inc., a shipping broker that drew commissions for bringing shippers, receivers and carriers together, that a load needed shipment east. The younger Brown contracted with Valentine to haul the load. Though no delivery date was discussed, Brown was aware that the highly perishable load of lettuce should reach Pennsylvania and Ohio before September 9, 1981.
Not having permits to drive a more northern route, Brown intended to drive a southern route which would take him through Arkansas, Tennessee or Mississippi. Brown realized at the time the trailer was loaded that it would be too heavy to meet the more restrictive weight limits in those states. He decided to drive through Mississippi and avoid the multiplied risk.
Brown encountered several problems along the way. His brakes failed before he could get out of California. In the desert, he blew two tires. Exhausted, Brown testified he had to rest for nearly a day and a half in two different locations. As a result of these and other problems, Valentine Truck Brokers electronically advanced funds to Brown or those to whom Brown owed money. The parties agree Valentine advanced at least $1,659.00 to Brown. Another advance check of $303.00 was offered by Valentine but later withdrawn. The total hauling fee due Brown at the termination point in Pennsylvania was $2,300.00 net after brokerage.
It was September 9 when Brown pulled into Vicksburg, Mississippi. He knew he was late, but when he called to inform Valentine of his plan to circumvent the scales, he said he was told to just get going. Brown did, but he got caught by tax commission enforcement officers. He followed them to a weigh station, where it was determined that the rig was overweight. Brown learned that the fine would be $126.00 and he would need an additional $300.00 advance to pay this fine, and to hire someone to haul the overweight part of the load to the state line and reload it onto his trailer.
He disconnected the trailer and drove his cab to a nearby truck stop on U.S. Highway 49 to call Valentine Truck Brokers to ask for money. He spoke with dispatcher Robert Knipe. There was a dispute as to whether Knipe stated the money would be or might be wired but Knipe told Brown to go to the S.O.S. Truck Stop in Clinton, Mississippi, where Valentine did business. *360 Brown proceeded to the truck stop and waited for approximately four hours, but no money arrived. Brown then returned to the scales to check on the load and discovered that the trailer had been moved.
Knipe testified that after receiving Brown's call, he telephoned the buyers in Pennsylvania and Ohio who cancelled the orders because they were late. Knipe then found a dealer for the perishable produce on a consignment basis in Atlanta. To get the load sold, attempting to minimize their joint loss, Knipe called Ralph Walker's trucking business, located on U.S. Highway 49 South, because Walker had helped Valentine pick up troubled loads on several previous occasions. He did not tell Walker who owned the trailer, but he told him that there was a overloaded trailer with perishable lettuce which needed to be taken to Atlanta for salvage immediately. Walker would be reimbursed for paying the fine and services.
Walker testified that he sent one tractor trailer and another cab to handle the job. The excess load was placed on the tractor trailer and the cab towed Brown's trailer. Once past the scales, Walker's men reloaded Brown's trailer and drove it on to Atlanta.
Walker testified that he knew the trailer wasn't Knipe's, but he thought it belonged to somebody "that was affiliated with Mr. Robert (Knipe)," so it would be alright. Walker said he did not ask permission to take the trailer because he didn't know the owner and he doubted that the owner knew him.
Knipe testified that on September 9 he spoke with Brown, Sr., who gave him permission to take the trailer. However, he wasn't sure whether that conversation preceded or followed his call to Walker. Raymond Brown, Sr. testified and denied he ever gave Knipe permission, and stated that, in any event, he did not speak with Knipe until September 12 because he was out of town.
After dropping the produce in Atlanta, Walker had Brown's trailer returned to Mississippi but taken to Houston, Mississippi and left at a plant where Walker did a lot of business. Walker thought he would leave Brown's trailer there because he often ran loads from Houston to Jackson, so it could easily be returned. He thought this would allow Brown and Valentine Truck Brokers to conclude their business as to who owed whom with regard to the lateness of the load of perishable lettuce resulting in the cancellation by the recipients.
Workers at the scales told Brown who took his trailer. On the same day it was taken, Brown went to Walker's office. Brown testified that he told Walker that his trailer was stolen and he wanted it back. Walker testified that he explained to Brown that the load of perishable produce was being salvaged in Atlanta, and Brown seemed satisfied with this. Walker told him to call Valentine Truck Brokers and speak with Knipe because it was Brown and Knipe's deal and not his.
Walker heard nothing more from Brown until September 12, when a Mississippi Highway Patrol Investigator and a Richland police officer questioned Walker about the trailer. Brown had reported it stolen, but Walker agreed to have it back within eight hours. The trailer was returned to the truck stop on U.S. Highway 49 near the weigh station about 2:00 a.m. on September 13. The trailer was undamaged. Walker was never charged.
The younger Brown spent $420.00 on food and hotel bills while in Jackson, and resorted to asking trucker friends to buy meals for his family when he ran out of money. Brown even accepted the Highway Patrol Investigator's offer to buy his son a meal.

LAW

I.
Upon these facts the jury returned a verdict of $5,000.00 for actual damages and $50,000.00 punitive damages. The first assignment of error asks:

*361 WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Walker and Ralph Walker, Inc. argue here that they cannot be liable for conversion because Ralph Walker, at worst, acted on the mistaken belief that Robert Knipe had authority to order the trailer moved and the produce salvaged. We are told that Walker reasonably believed Knipe had this authority.
Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right. Mississippi Motor Finance, Inc. v. Thomas, 246 Miss. 14, 149 So.2d 20 (1963). Walker's good faith reliance does not absolve him from liability as to actual damages, however, a different result is reached as to punitive damages.
Prosser and Keeton point out that the intent required is not the intent to be a wrongdoer.
The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property. A mistake of law or fact is no defense. "Persons deal with the property in chattels or exercise acts of ownership over them at their peril," and must take the risk that there is no lawful justification for their acts. The essential problem is whether the interference is of so serious a character as to require the defendant to buy the goods.
Prosser and Keeton on The Law of Torts. 92-93 (W. Page Keeton 5th ed. 1984). (emphasis added) See Masonite Corp. v. Williamson, 404 So.2d 565, 567-68 (Miss. 1981) ("[N]either a mistake of fact on the part of [the defendant] ... nor [his] good faith ... is a defense to this action of conversion.") Furthermore, the tort is complete upon taking possession from the owner, and no demand for the chattel's return is necessary. Prosser and Keeton, supra at 93.
Walker can take no solace in a claim that he was the innocent agent or servant of Valentine Truck Brokers. Though an agent or servant who innocently receives or transports goods on behalf of his principal may be insulated, Prosser and Keeton, supra at 95, that protection is not afforded the agent who negotiates the transaction. We hold there was sufficient evidence that Walker, in a legal sense, negotiated the transaction through which he wrongfully gained possession of Brown's trailer. The jury was justified in finding that this was done with the intent to exercise dominion and control over the trailer, which was in fact inconsistent with Brown's rights. We affirm the $5,000.00 judgment holding Walker liable for the actual damages for conversion; however, as we discuss in Part III, Walker's good faith requires reversal of the punitive damages award in this case.

II.

WAS THE JURY'S AWARD OF ACTUAL AND CONSEQUENTIAL DAMAGES AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Our review of jury awards is limited. As we stated in Miles v. Duckworth, 481 So.2d 757, 759 (Miss. 1985):
This Court will not set aside the verdict of a jury on damages unless we are convinced that the verdict resulted from bias, passion or prejudice on the part of the jury; and the verdict is shocking to our conscience on the evidence presented.
See Mississippi Farm Bureau Mutual Ins. Co. v. Garrett, 487 So.2d 1320 (Miss. 1986); Jesco, Inc. v. Shannon, 451 So.2d 694 (Miss. 1984); James Reeves, Contractor, Inc. v. Chain, 343 So.2d 1229 (Miss. 1977); Kinnard v. Martin, 223 So.2d 300 (Miss. 1969).
We cannot say the jury verdict in this case is such that it must be set aside. The jury was instructed that it could award actual and consequential damages. The *362 jury could have considered the amount of money lost on the shipment not being delivered, the Browns' expenses in staying in Mississippi for nearly five days and the consequential harm resulting from the trailer's detention. The Browns expended $420.00 on food and hotel bills and Brown had to sell his four-month old CB radio at a loss to obtain cash. The jury also could have considered lost business because of the extended stay in Jackson. Raymond Brown, Jr. testified that he intended to deliver the produce and then contract to carry another load, but could not because the trailer was gone. Brown testified that he could have delivered the produce by September 10, giving him two to three days during which he could have obtained and possibly delivered another load. We find no error in the jury award.

III.

DID THE TRIAL COURT ERR IN GRANTING A PUNITIVE DAMAGE INSTRUCTION?
Though we affirm the award of actual damages, the good faith which provides Walker no defense to conversion nonetheless absolves him from liability for exemplary damages.
This Court has variously stated that punitive damages are recoverable where the defendant has done to the plaintiff a wrong which imparts insult, fraud, oppression or reckless disregard for the plaintiff's rights, or where there was a showing of a willful intentional wrong, or such gross negligence and reckless conduct as is equivalent to such a wrong. Candebat v. Flanagan, 487 So.2d 207, 212 (Miss. 1986); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465 (Miss. 1983); T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972); Seales v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970). This in essence means that the plaintiff must "prove a wrongful act intentionally performed or a gross disregard of the rights of plaintiff." Tideway Oil Programs, Inc., 431 So.2d at 460 (Miss. 1983); Milner Hotels, Inc. v. Brent, 207 Miss. 892, 43 So.2d 654 (1950).
In other recent cases, this Court has characterized the rule by stating that the defendant may be subject to punitive damages where he acted with malice or with gross negligence or reckless disregard of the plaintiff's rights. Bell v. First Columbus National Bank, 493 So.2d 964 (Miss. 1986); Weems v. American Security Ins. Co., 486 So.2d 1222, 1226 (Miss. 1986). See Restatement (Second) of Torts § 908(2) (1979).
Applying these standards to the defendant Ralph Walker yields the conclusion that the case against him is not an appropriate case for punitive damages. This Court in Wood v. Mississippi Power Co., 245 Miss. 103, 119, 146 So.2d 546, 552 (1962), stated "[W]hen an act has been done in good faith, even though it may have resulted in injury to the plaintiff, in general there cannot be recovery of punitive damages."
Here it is clear that Valentine Truck Brokers, Inc. through its agent Robert Knipe, exhibited, if not intentional wrongful conduct, then, at the least, such reckless disregard of Raymond Brown, Jr.'s right to his trailer that a punitive damage instruction was appropriate as to it.
However, the same is not true of Ralph Walker. The testimony is undisputed that Walker removed Brown's trailer from the weigh station at the urging of Valentine Truck Brokers and under the mistaken belief that Knipe had authority to have someone move it. The fact that Walker knew the trailer belonged to someone else did not rob him of his good faith reliance on Knipe. The undisputed evidence shows that Walker had dealt with Knipe before in moving distressed perishable loads, and he thought Brown's plight presented a similar situation. In this case, though Walker knew that neither he nor Knipe owned the trailer, there is nothing to indicate that Walker was unreasonable in his belief that the driver affiliated with Knipe would approve his efforts to salvage the perishable produce after the shipment was cancelled.
*363 Raymond Brown, Jr. did notify Walker of his interest in having the trailer returned. However, at that point the trailer was on its way to Atlanta. Walker told Brown to speak with Knipe to resolve their differences, and Walker reasonably thought that Brown did so when he heard nothing for almost three days. This conversation did not change the character of Walker's acts, especially considering that Walker did promptly return the trailer after authorities informed him that Brown reported it stolen.
No doubt, Walker could have exercised more caution before taking the trailer. Prudence would normally dictate consulting the owner before appropriating his property for even a short period. However, given the exigent circumstances of a perishable load, the course of dealings between Knipe and Walker and Walker's prompt return of the trailer when he learned of Brown's dissatisfaction, the proof does not show the kind of totally unacceptable conduct we require to subject a defendant to exemplary damages.[1]
To instruct the jury concerning the award of punitive damages was error upon these facts and requires reversal of the punitive damages award.

IV.

WAS ANY AWARD OF PUNITIVE DAMAGES AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND LAW?

V.

WAS THE PUNITIVE DAMAGES AWARD EXCESSIVE?
Because we hold that this is not an appropriate case for punitive damages, we have effectively answered Walker's fourth assigned error, and we need not reach his argument under his fifth assigned error.
We hereby affirm the jury's verdict of liability for actual damages in the amount of $5,000.00 but, for the reasons stated, we set aside, vacate and render the punitive damage award of $50,000.00 against Ralph Walker, Inc. and Ralph Walker, Individually.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The trial judge initially decides whether to submit the issue of punitive damages to the jury, Blue Cross & Blue Shield of Miss., Inc. v. Campbell, 466 So.2d 833, 842 (Miss. 1984), but we will not hesitate to reverse if it is not an appropriate case. See, Fedders Corp. v. Boatright, 493 So.2d 301 (Miss. 1986).