656 So.2d 1150 (1995)
Carl Jack TERRELL
v.
Darryl J. TSCHIRN, Jr.
No. 92-CA-00183-SCT.
Supreme Court of Mississippi.
May 25, 1995.
Wayne Dowdy, Magnolia, for appellant.
Darryl J. Tschirn, Sr., LaJolla, CA, George W. Byrne, Jr., New Orleans, LA, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, For the Court:
This appeal comes to us from a jury verdict in the Circuit Court of Pike County, Mississippi, whereby appellant, Carl Jack Terrell ("Terrell") was found liable for conversion of appellee, Darryl J. Tschirn, Jr.'s ("Tschirn") stolen automobile. The jury assessed damages and returned a verdict in favor of Tschirn in the amount of $14,500.00. *1151 Finding the evidence presented at trial to be insufficient for the jury to reasonably and competently assess damages, we reverse and remand for a new trial.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
In March of 1988, Darryl Tschirn, Jr. of Metairie, Louisiana, received a 1988 Chevrolet Camaro IROC as a high school graduation present, and title to the car was put in his name. Tschirn maintained only liability insurance on the vehicle. He installed a stereo unit in the car himself at a cost of six hundred dollars. He also put a different set of tires on the car. The sales receipt for the car was put into evidence and reflected a total cash price including tax and license of $22,489.99.
On July 24, 1989, Tschirn was attending a meeting in New Orleans, Louisiana. After leaving the meeting he discovered his car was missing. Tschirn called the police and filed a report. Tschirn was contacted in August of 1990 and was informed that the police had located his stolen vehicle. The car, which had been partially dismantled, was found in Terrell's possession.
Carl Jack Terrell owned a used car and auto salvage business in Magnolia, Pike County, Mississippi. At the time of trial he had been in the salvage business for approximately eighteen years. Terrell also rebuilt automobiles himself and did most of the work at his place of business. He stated that he liked to rebuild pickups and Camaros.
Terrell testified that it was his practice to require proof of title only when he bought an automobile for resale. He did not require or even ask for a title or proof of ownership when he was buying a car for salvage. He described a salvage vehicle as "[a] vehicle that is being sold for parts" which he sold to the public, other dealers or other salvage yards. When asked how he knew whether the cars he bought for parts were not stolen Terrell replied, "I don't know that."
Terrell testified as to how he acquired possession of Tschirn's vehicle. A man whose name Terrell could not recall but which he remembered sounded Cajun, came by his place of business. The man indicated that he was in the towing business and that once he held a car for a certain length of time he was allowed to dispose of it. He asked Terrell if he would be willing to do business. Terrell told the man he would be interested in some parts for pickups or Camaros because those were the types of vehicles he liked to rebuild.
Terrell bought salvage vehicles from this man on approximately six occasions and paid cash for those vehicles. Terrell stated that he never asked for title to these vehicles because they usually just amounted to parts, no more than "half a car was there." He stated that the man knew he was rebuilding a Camaro and on one occasion brought him what turned out to be Tschirn's stolen car. Terrell described the condition of the car when he bought as follows: "There were no mechanical parts to the car, the motor/transmission was all gone. The doors were gone. The hood was there but it was damaged, and the fender and grill was primarily what I needed for the car I was working on... ."
Norman Sandifer, who had been in the scrap and salvage business for twenty-five to thirty years, testified for the plaintiff. He stated that in July of 1990 Terrell came by his place of business and told him he had some cars he wanted to get rid of and asked to use Sandifer's car crusher. Sandifer told Terrell that his crusher was not there at the time but that he would call him when it got back. Sandifer did call Terrell and he returned with a late model Camaro on a trailer. Sandifer stated that when Terrell arrived with the car the crusher still was not back and he told Terrell to leave because he did not want the car on the premises. When asked why, Sandifer replied that it was a late model car and Terrell did not have the paper work on it to prove it was not stolen. Sandifer stated that when a car was only a few years old he always required the paper work on the car as proof of ownership. Since the crusher was not there at the time, Sandifer sent Terrell away again. When the crusher was returned Sandifer called Terrell and told him he could bring the car back.
Charles Chadwick, an officer with the Magnolia Police Department, also testified *1152 for the plaintiff. Chadwick stated that on July 31, 1990, another officer, Ken Foil, received a phone call from Norman Sandifer. As a result of the call "Ken Foil and myself went out in the patrol car and was waiting on Emerald State Line Road, Emerald Road, and was waiting for any person or Mr. Terrell that came through that road going to Mr. Sandifer's wrecker yard with scraps, or a car, supposed to have been, on a trailer." Subsequently, Terrell came along pulling a flat bed trailer carrying a 1988 Camaro. Terrell was stopped and he and the trailer were taken to the Sheriff's Office. The car could not be identified at that time because the VIN number had been removed from the dashboard. Curtis Newman, an investigator with the Mississippi Department of Public Safety was later able to identify the car as the one belonging to and stolen from Tschirn.

DISCUSSION

A. WHETHER PLAINTIFF'S ATTORNEY COMPLIED WITH THE PROVISIONS OF RULE 46, MISSISSIPPI SUPREME COURT RULES.
Darryl J. Tschirn, Sr., the father of appellee Darryl J. Tschirn, Jr., acted as his son's counsel both in the proceedings in the trial court and on this appeal. Tschirn, Sr. is a member of the bar of the State of Louisiana, but is not licensed to practice in Mississippi. Terrell argues that Tschirn, Sr. failed to comply with Rule 46 of the Mississippi Supreme Court Rules, which provides for a foreign attorney to appear in a court of this state as counsel pro hac vice in a particular cause, and therefore the pleadings and judgment should be stricken.
Tschirn, Sr. did not follow the appropriate procedures to appear pro hac vice. He never filed an informational affidavit as required by Rule 46(b)(4) and although he apparently attempted to associate with local counsel, according to the bar rolls, that attorney is not a member in good standing of the Mississippi Bar, as required by Rule 46(b)(3). The name of George Byrne, Jr. of New Orleans, Louisiana, appears on the pleadings and Byrne was present at trial. However, a review of the Mississippi Bar rolls shows Byrne as being ineligible to practice.
Because of Tschirn, Sr.'s violation of Rule 46, upon proper motion by Terrell the pleadings in this case would have been stricken from the record. See, Rule 46(b)(8)(A). However, Terrell made no such motion until after an adverse verdict was returned against him. After the judgment was entered, Terrell filed a Motion By Defendant to Strike Pleadings and Set Aside Judgment, citing Tschirn, Sr.'s noncompliance with Rule 46. Terrell again raised this issue in his Motion for JNOV. The trial court denied the motions stating that issue was raised too late and motion should have been made before trial. He also stated the fact that since Tschirn, Sr. was the father of the plaintiff he may have been working without fee.
There are no Mississippi cases on this precise issue nor could any cases on point from other jurisdictions be found. The possibility that Tschirn, Sr. may have been working without fee has no bearing on this issue. Although there is a pro se exception to the rule there is no pro bono exception. See Rule 46(b)(7).
It is not clear from his brief, but apparently Terrell is asking this Court to find that there is no time constraint in filing a motion concerning a Rule 46 violation. We decline this invitation. Where a party knows or with reasonable diligence may have discovered the Rule 46 violation, the failure to file a motion prior to trial acts as a waiver and procedurally bars him from raising the issue on appeal. Terrell should not be allowed to take his chances with a jury and then, after he loses, file his motion. See Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss. 1991) (party who knew of grounds for judge's recusal could not wait until after adverse verdict to file a motion, the point is deemed waived). See also Ryals v. Pigott, 580 So.2d 1140, 1175-76 (Miss. 1990); City of Biloxi v. Cawley, 332 So.2d 749, 750 (Miss. 1976).
It is clear on the face of the record that Tschirn, Sr. never submitted an affidavit as required by the rules. A check of the bar rolls also shows Byrne, whom Tschirn tried to associate as local counsel, is listed as ineligible to practice. With reasonable diligence *1153 Terrell could have come by this information prior to trial. This issue is procedurally barred on this appeal. However, if Tschirn, Sr. does not follow the proper procedures on remand, Terrell would have the right to file a motion under Rule 46.

B. THERE WAS SHOWN NO CAUSAL CONNECTION BETWEEN THE ACTS OR OMISSIONS OF MR. TERRELL AND THE INJURY OF MR. TSCHIRN.
"This Court will not reverse a jury verdict unless it is against the overwhelming weight of the evidence and credible testimony." Gifford v. Four-County Elec. Power Ass'n, 615 So.2d 1166, 1171 (Miss. 1992); Marcum v. Mississippi Valley Gas, 587 So.2d 223 (Miss. 1991); Roberts v. State Farm Mut. Auto. Ins. Co., 567 So.2d 1193 (Miss. 1990). This case was submitted to the jury on the basis of negligence and/or gross negligence and/or intentional tort and/or negligent conversion. The jury found for the plaintiff.
Terrell argues that although he may have been negligent in not requiring title when he bought vehicles for salvage and in telling the unidentified man that he would be interested in parts for Camaros and pickups and then paying cash for Tschirn's Camaro, there was no causal connection between this negligence and Tschirn's injury, the loss of his car. Tschirn argues that but for Terrell providing an outlet for stolen vehicles and but for Terrell paying cash for stolen vehicles and but for Terrell and others like him not requiring paperwork, the car thieves would have no place to dispose of stolen goods and therefore would have no motive to steal.
Although remote, there does seem to be some causal connection between Terrell's negligence and Tschirn's injury. The unidentified man knew Terrell did not require title when he bought cars for parts and Terrell told the man he would be interested in Camaro parts. It is conceivable that this knowledge sent the unidentified man on a search for a Camaro which could be stolen and then sold to Terrell. Terrell argues that it is uncontradicted that when he bought the car a significant portion of the car was not present. This does not mean the unidentified man did not search out a Camaro specifically because of Terrell's negligence. It just means that the man knew that if he tried to sell a whole car to Terrell he would be required to present a title he did not have.
It is not necessary to rely on the negligence theory. When Terrell bought the stolen car he was guilty of conversion. "Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." Walker v. Brown, 501 So.2d 358, 361 (Miss. 1987); Mississippi Motor Finance, Inc. v. Thomas, 246 Miss. 14, 149 So.2d 20 (1963). It does not matter whether Terrell knew the Camaro was stolen or not. Although intent is required it does not have to be the intent to be a wrongdoer. Walker, 501 So.2d at 361.
A person who purchases or accepts the possession of stolen personal property is often regarded as liable for the conversion thereof. This rule is generally applied where, in addition to the act of purchasing the goods or accepting possession thereof, the defendant appropriates the property or holds it to his own use, or refuses to comply with a demand of the owner to surrender possession, or sells, transfers, or disposes of the goods.
18 Am.Jur.2d § 36 at 170 and cases cited therein.
Prosser and Keeton also point out that good faith is not necessarily an excuse.
The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiffs rights. A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property. A mistake of law is no defense.
Prosser and Keeton on the Law of Torts. 92-93 (W. Page Keeton 5th ed. 1984). See also Masonite Corp v. Williamson, 404 So.2d 565 (Miss. 1981).
When Terrell took possession of Tschirn's Camaro with the intent to exercise proprietary control and to put it to his own use he *1154 was guilty of conversion and therefore liable to Tschirn for damages.

C. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED ON WHICH THE JURY COULD BASE A VERDICT FOR MR. TSCHIRN'S DAMAGES.
Terrell contends that the jury was presented insufficient evidence on which to assess damages and that the evidence that was presented was uncertain and speculative. The jury found for Tschirn and awarded him damages in the amount of $14,500.
The plaintiff bears the burden of proof as to the amount of damages. Puckett Machinery Co. v. Edwards, 641 So.2d 29, 36 (Miss. 1994); City of New Albany v. Barkley, 510 So.2d 805, 808 (Miss. 1987); Harper v. Hudson, 418 So.2d 54 (Miss. 1982). Although the measure of those damages does not have to be exact, the most accurate and reliable evidence available should be presented. Puckett Machinery Co., 641 So.2d at 36; Barkley, 510 So.2d at 807; Harrison v. Prather, 435 F.2d 1168, 1174 (5th Cir.1970). In a suit for conversion, the value of the personal property at the time and place of conversion must be shown to prove the extent of damages. PACCAR Financial Corp. v. Howard, 615 So.2d 583, 590 (Miss. 1993); Masonite Corporation v. Williamson, 404 So.2d 565 (Miss. 1981); Georgia-Pacific Corp. v. Blakeney, 353 So.2d 769, 773 (Miss. 1978).
In his case in chief, Tschirn put on no evidence of the value of his car when it was stolen. The sales receipt for the car was put into evidence. It showed the car plus tax and license cost $22,489.99 when it was bought in March of 1988. The car was stolen some 16 months later in July of 1989. Tschirn testified that he had put on different tires, but the cost of the new tires was not given. He also stated he had installed a $600.00 stereo. There was no evidence as to the mileage on the car or to car's condition at the time it was stolen. Tschirn did state he "took good care" of the car and that there was a cigarette burn on the passenger seat. There was absolutely no testimony or other evidence introduced as to any expenses incurred because to the loss of the car.
At the close of Tschirn's case in chief, Terrell moved for a directed verdict because there had been no proof as to the value of the car or other damages. The Court reserved his ruling until the defendant put on his case in order to see if any evidence as to the value of the car would be presented.
Tschirn tried to establish the worth of the stolen car through Terrell's testimony on cross-examination. The evidence presented to the jury from which to assess damages was speculative at best. Tschirn put on no evidence as to damages in his case in chief and so on cross-examination he badgered Terrell into stating that a fourteen month old car, fully loaded and in mint condition might be worth about half of its value new. Tschirn also tried to get Terrell to say that such a Camaro would cost around $24,000 new, making half around $12,000. Terrell repeatedly stated that he could not give an answer without seeing the car.
In trying to get Terrell to make his case for him, Tschirn's attorney more or less tried to testify before the jury. He asked Tschirn if a new Camaro would cost around $24,000 when the sales receipt into evidence showed that the car cost around $22,500, fifteen hundred dollars less. He also asked Terrell about the value of a fourteen month old Camaro, fully loaded and in mint condition. The car was sixteen months old when it was stolen, there was no evidence about the optional features on the car or what condition it was in when stolen. Terrell never gave a definite answer as to the value of such a car as described by Tschirn's attorney and even if his answer is considered reliable there was not enough evidence present to show that it reflected the value of a car with the same characteristics as the stolen car.
This is not a case were the amount of damages would be extremely difficult to prove. Tschirn had available to him sources and means whereby damages could have been ascertained with a fair degree of certainty. Norman Sandifer, one of the Tschirn's witnesses, was a salvage dealer and could have been asked about the value of the car. Tschirn could have further testified about the mileage and condition of his car at the time it was stolen and to the expenses he *1155 incurred because of its loss. For example, Tschirn could have presented receipts for rental cars if any. The price listed in the National Automobile Dealers Association's Blue Book could have been introduced. No doubt there were other ways to better determine the extent of damages than badgering the defendant into making a less than definite guess.
This is an occasion where the trial judge probably should have directed a verdict for Terrell. However, Terrell chose to put on further evidence and did not raise in this appeal the issue of the trial court's denial of directed verdict. Because the speculative nature of the damages in this case, we find the jury's verdict was against the overwhelming weight of the evidence and this case should be reversed and remanded for a new trial.

CONCLUSION
Terrell is procedurally barred from complaining that Tschirn's attorney did not comply with Miss. Supreme Court Rule 46 in being admitted as counsel pro hac vice. The evidence was sufficient at the very least to show Terrell was guilty of conversion by purchasing Tschirn's stolen vehicle. However, the evidence was insufficient for the jury to reasonably and competently assess damages. For that reason, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
As the majority acknowledges, Darryl J. Tschirn, Sr., acted as legal counsel for his son in attempting to prove conversion of Tschirn, Jr.'s automobile in Mississippi courts without being licensed in this state. The decision of this Court to allow Tschirn, Sr., a new trial completely ignores the rules established by bench, bar and legislature.
First, our legislature has mandated that an attorney must be licensed to practice law in this state:
It shall be unlawful for any person to engage in the practice of law in this state who has not been licensed according to law. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished in accordance with the provisions of section 97-23-43.
Miss. Code Ann. § 73-3-55 (1989).
We might as well do away with all our licensure requirements if this Court is going to allow Tschirn, Sr., to act as legal counsel without satisfying bar regulations heretofore necessary to appear in our court system, and applicable to everyone. Under this statute, Tschirn, Sr., who admittedly was not licensed in this state, has committed a misdemeanor, yet this Court awards a new trial.
Second, Rule 46(b)(1) & (4), established by this Court, allows an out-of-state attorney not licensed in Mississippi (a.k.a. "foreign attorney") to appear as counsel pro hac vice provided that he files an informational affidavit. The informational affidavit requires him to state whether he is a member in good standing of any other bar thus enabling the Mississippi court to determine if this person is "familiar with the principles, practices, customs, and usages of the legal profession in this state." Rule 46(b)(1). Nowhere does the rule mention that it can be waived if the opposing party fails to raise a complaint of noncompliance. To follow the reasoning set forth in the majority's opinion, it would be acceptable for a person to break any law as long as he does not get caught. Tschirn, Sr., failed to follow the one and only exception to our rule requiring a license to practice. As such, he should not have been allowed the first trial, and certainly is not entitled to a new trial.
Finally, this Court has acknowledged that a foreign attorney, when complying with our rule permitting appearance pro hac vice, avers that he is familiar with our rules of court. Duncan v. St. Romain, 569 So.2d 687 (Miss. 1990). By inference, this Court dictates a foreign attorney must apply pro hac vice if *1156 he is not admitted to practice before our courts. In Duncan, the Louisiana attorney mistakenly relied on Miss. Code Ann. § 11-51-5 allowing 45 days for appeal, and this Court denied his petition for rehearing by saying:
Moreover, counsel's application to the lower court for admission pro hac vice belies his present plea for an exception to our well-worn rule. Therein he averred "[t]hat he is familiar with the rules of the court and will abide by all rules of the court and all orders of the court." Unhappy as this result may be, the imperatives of principled consistency in the administration of justice command that we enforce the rule as written.
Duncan, 569 So.2d at 688.
Once again, the rule as written does not allow exceptions to filing pro hac vice. The majority states it was unable to find any cases on point from other jurisdictions, yet our sister state of Alabama has addressed a similar issue. Borrowing their analysis, Tschirn, Sr., should not be allowed to proceed in our courts. In Black v. Baptist Medical Center, 575 So.2d 1087 (Ala. 1991), a complaint was filed by a nonresident attorney who was not licensed to practice law in Alabama and was not admitted pro hac vice. Summary judgment was granted on a statute of limitations ground, and the plaintiff appealed. Black, 575 So.2d at 1087. The Alabama Supreme Court found the filing to be a nullity, and the ineffective filing was not cured by a notice of appearance filed two months after the statute of limitations expired, nor did the original attorney's submission of a letter of introduction or recommendation to the court from a member of the Board of Commissioners cure the statute of limitations problem. Id. at 1088. Tschirn, Sr., has taken no remedial action to be licensed in the state or filed pro hac vice and should he do so after the decision of this Court, the action should be declared null and void.
The Alabama Court stated:
While this Court sympathizes with Black's predicament, we do not agree with his characterization of Rule VII. The regulation of the admission of attorneys to practice before Alabama courts is a matter of great concern to the State and to this Court. Rules effecting [sic] such regulation cannot be considered minor.
Id.
Being an out-of-state attorney, if Tschirn, Sr., had been representing a defendant, the same reasoning would apply, and the answer filed by him would have to be stricken.
In any interpretation applied to Tschirn, Sr., be it statute, case law or our own rules, he fails to meet the tests required to have the privilege of practicing before our courts. We should not brush off this serious infraction of our rules regulating the practice of law. Accordingly, I dissent.