No. 79,944

JAMES D. RAFFERTY and LINDA F. RAFFERTY, *Appellants*, v. LAND O'LAKES, INC., and TERRY L. DOSSETT, *Appellees*.

(965 P.2d 825)

Opinion filed October 30, 1998.

*Kenneth M. Carpenter*, of Carpenter, Chartered, of Topeka, argued the cause, and *Richard Showalter*, of the same firm, was with him on the brief for appellants.

*Stephen S. Brown*, of Niewald, Waldeck & Brown, of Kansas City, Missouri, argued the cause, and *Victoria M. Schroeder*, of the same firm, was on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a personal injury action that arose from an intersection collision between a vehicle driven by James Rafferty and a truck belonging to Land O'Lakes, Inc. (Land O'Lakes). The case was tried to a jury, which attributed 50% fault to James Raf-

ferty. The Raffertys appealed. This appeal was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

On February 3, 1994, at approximately 6 a.m., two vehicles collided at the intersection of 4th and Monroe Streets in Topeka. The intersection is controlled by traffic signals located on the corners and overhead. It was dark at the time of the accident.

One vehicle, a semi-trailer truck, was driven by Terry Dossett for Land O'Lakes. He exited Interstate 70 at the 4th Street exit. He was going to deliver his load of dairy products to a distributor that was located less than a mile away.

The other vehicle was a pickup truck, which was driven by James Rafferty. He was on his way to work at Santa Fe Railroad, which is on Quincy Street. His shift began at 7 a.m.

In a statement given to the police officer at the scene of the accident, Dossett said:

"I had just come off of Interstate 70. I turned left on 4th Street to go west. I was going to Kaw Valley Cheese and Butter. At 4th and Monroe I . . . wasn't paying attention and ran a red light. I hit the pickup crossing in front of me. I was going between 10 and 15 miles per hour. I have no idea how fast the pickup was going."

At trial, Dossett testified that he did not know what color the light was when he entered the intersection of 4th and Monroe. He stopped at the bottom of the exit ramp from Interstate 70, then turned left onto 4th Street, entered the intersection of 4th and Monroe at approximately 15 miles per hour, and collided with Rafferty's truck without ever seeing it. He heard no horn or brakes.

Rafferty testified that the traffic light changed from red to green as he approached the intersection; he "proceeded forward and the next thing [he] knew someone was shaking [him]." He remembered nothing about the collision.

There were two witnesses to the accident. Gary Gorden testified that he was driving behind Rafferty, whose "pickup appeared to have been stopped and then the light had changed and it took off." He estimated Rafferty's speed at 5 to 10 miles per hour and Dossett's speed at "probably forty miles an hour." Leonard Tyler testified that his office was in the building at 4th and Monroe. He was walking toward the intersection at the time of the accident. He

saw the semi-trailer truck enter the intersection on a green light. On cross-examination, Raffertys' counsel showed Tyler a photograph of the intersection that had been taken during daylight from where Tyler was walking at the time of the accident. Tyler was asked to observe that the traffic signal had "shields" and "cones" on it. Raffertys' counsel asked, "And you are telling us from your vantage point three feet beyond what's viewed in that photograph that you were able to see that the light was green?" Tyler answered, "Sure; because it reflects, it glows." On redirect examination, he further explained that in the dark he could see the green glow of the traffic signal, even if he would not have been able to tell the color of the light from the same spot during daylight hours.

The Raffertys first argue that the verdict should have been vacated by the district court on the ground that a lawyer not admitted to practice in Kansas represented Land O'Lakes at trial. Interpretation of statutes and rules is a question of law. On appeal, this court's review of a question of law is unlimited. See *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997); *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

The Raffertys' petition was filed in Shawnee County District Court on September 13, 1995. The answer was filed on behalf of Land O'Lakes by a Topeka attorney. A letter contained in the record on appeal shows that by February 1996, plaintiffs' attorney was corresponding about discovery matters with Stephen S. Brown of the Kansas City, Missouri, office of the firm Niewald, Waldeck & Brown. The first filing contained in the record on appeal that bears Brown's signature is an entry of appearance, with the file-stamped date of February 7, 1996. Brown signed the entry of appearance, listing a Kansas City, Missouri, address for the firm and a Missouri Bar number for himself. The filing is co-signed by another member of the firm, Michael Sears, who lists a Kansas Supreme Court registration number. In December 1996, a notice was filed substituting Victoria M. Schroeder for Sears as counsel of record for Land O'Lakes. Schroeder has a Kansas Supreme Court registration number. Examination of the record on appeal reveals a number of filings served and letters exchanged between counsel for the Raffertys and counsel for Land O'Lakes from which Brown's status as an

attorney admitted to practice in Missouri and not in Kansas was obvious.

Trial was held in April 1997. On May 8, 1997, counsel for the Raffertys filed a motion to vacate the verdict and judgment on the ground that Stephen Brown, who actively participated in the trial, was not admitted to practice law in Kansas and had "never moved the Court, in writing or orally, for admission for the purposes of this case."

In response, Victoria Schroeder filed a "Motion for Admission Pro Hac Vice" for the admission of Stephen S. Brown as the attorney of record for Land O'Lakes. Attached to the motion is the affidavit of Brown, in which he states the following:

"I am a shareholder at Niewald, Waldeck & Brown, P.C., a Missouri Professional Corporation, with its primary office located at 1200 Main, Suite 4100, Kansas City, Missouri 64105 and which is authorized to do business in the State of Kansas with a Kansas business address of 51 Corporate Woods, 9393 W 110th Street, Suite 500, Overland Park, Kansas, 66210."

On July 9, 1997, the district court granted the motion and admitted Brown "to practice before this Court in this particular civil action as long as he has associated himself with members in good standing of the bar of this Court." The district court also denied the Raffertys' motion to vacate the verdict.

K.S.A. 7-104 provides:

"Any regularly admitted practicing attorney in the courts of record of another state or territory, having professional business in the courts or before any board, department, commission or other administrative tribunal or agency, of this state, may, on motion be admitted to practice for the purpose of said business only, in any of said courts, tribunals or agencies, upon taking the oath as aforesaid and upon it being made to appear by a written showing filed therein, that he or she has associated and personally appearing with him or her in the action, hearing or proceeding an attorney who is a resident of and duly and regularly admitted to practice in the courts of record of this state, upon whom service may be had in all matters connected with said action, hearing or proceeding, with the same effect as if personally made on such foreign attorney, within this state, and such foreign attorney shall thereupon be and become subject to the order of, and amenable to disciplinary action by the courts, agencies or tribunals of this state. No such court, agency or tribunal shall entertain any action, matter, hearing or proceeding while the same is begun, carried on or maintained in violation of the provisions of this section, but nothing in this section shall be construed to prohibit any party from

appearing before any of said courts, tribunals or agencies, in his or her own proper person and on his or her own behalf."

Supreme Court Rule 116 (1997 Kan. Ct. R. Annot. 152) provides, in part:

"(a) Any attorney not admitted to the practice of law in Kansas but regularly engaged in the practice of law in another state or territory, and who is in good standing pursuant to the rules of the highest appellate court of such state or territory, who has professional business in the courts or any administrative tribunal or agency of this state, may on motion be admitted to practice law for the purpose of said business only, upon showing that he or she has associated with him or her, an attorney of record in the action, hearing or proceeding, who is a resident of Kansas, regularly engaged in the practice of law in Kansas, and who is in good standing under all of the applicable rules of the Supreme Court of Kansas. The Kansas attorney of record shall be actively engaged in the conduct of the matter or litigation, shall sign all pleadings, documents, and briefs, and shall be present throughout all court or administrative appearances. . . .

. . . .

"(c) No court, agency or tribunal shall entertain any action, matter, hearing or proceeding while the same is begun, carried on or maintained in violation of the provisions of this rule. Nothing in this rule shall be construed to prohibit any party from appearing personally before any of said courts, tribunals or agencies on his or her own behalf."

The Raffertys contend that the verdict and judgment in this matter should be vacated because the district court entertained the action in violation of the statute and the rule. It is their position that Brown's entry of appearance and subsequent unquestioned and unobjected to active representation of Land O'Lakes is not a substitute for a motion requesting that he be admitted to practice law in this state for the purpose of this action. They cite *Taylor v. Taylor*, 185 Kan. 324, 342 P.2d 190 (1959); *Bradley v. Sudler*, 172 Kan. 367, 239 P.2d 921 (1952); and *Architectural & Engineered Products Co. v. Whitehead*, 19 Kan. App. 2d 378, 869 P.2d 766, *rev. denied* 255 Kan. 1000 (1994) (*A & E Products*).

*A & E Products* does not support the Raffertys' argument. The plaintiff in that case, A & E, was represented by Dennis Muller, an attorney licensed in Missouri. Although the pleadings also reflected as attorney of record John McNally, an attorney licensed in Kansas, none of the substantive pleadings in the action had been signed by him. Where McNally's name appeared, Muller had con-

formed the signature. McNally had not appeared at any of the proceedings before the district court, and Muller had not informed McNally when the pretrial conference was scheduled. Nor had Muller filed a motion to be admitted to practice in Kansas in the *A & E Products* proceedings. When Whitehead's counsel learned at the pretrial conference of Muller's failure to comply with the pertinent statute and rule, they requested that A & E's petition be stricken and the action be dismissed with prejudice. Denying A & E's attorneys' request for leave to comply with the procedural requirements, the district court struck the pleadings and dismissed the action with prejudice. Citing *Thornburg v. McClelland,* 186 Kan. 20, 348 P.2d 617 (1960), and K.S.A. 1993 Supp. 60-211 and its antecedents for the principle that litigants should be given notice and opportunity to cure procedural defects, the Court of Appeals reversed.

In *Thornburg,* the court held that a litigant's failure to comply with the procedural requirements of K.S.A. 7-104 does not deprive the court of jurisdiction. Instead, the statute prohibits a court from entertaining an action "while the same is begun, carried on or maintained in violation of the provisions of this section." The court added that a court has power to strike pleadings or dismiss an action if the litigant, once on notice, failed to take steps to comply. In *A & E Products,* the Court of Appeals stated: "We read this to mean that, once the party has notice, that party should have an opportunity to comply. Failure to give the party this opportunity to comply constitutes error." 19 Kan. App. 2d at 381. In *Thornburg,* this court stated its belief "that it would be unfair and unnecessary to construe the statute to have a technical and arbitrary meaning so that the litigants may be injured when the sole purpose of the statute is to regulate the practice of lawyers for the benefit of the public and the courts." 186 Kan. at 23.

In the present case, when the Raffertys' counsel complained after trial that Brown had not asked to be admitted in this state for the purpose of the instant proceedings, Schroeder filed a written "Motion for Admission Pro Hac Vice" of Brown. The motion was supported by Brown's affidavit, which furnished all pertinent in-

formation about where he was admitted to practice and his good standing. The motion was granted; the defect was cured.

*Thornburg* marked something of a turning point in this court's interpretation of K.S.A. 7-104. After reciting the factual circumstances, the court stated: "From the above record it would clearly appear that the bar of the state is in doubt as to the construction to be placed upon the language of section 7-104. We feel that the time has arrived when this court should clearly define the meaning of the section." 186 Kan. at 22. The court went on to reject the contention that the statute deprives the court of jurisdiction in the absence of compliance and to construe the statute as authorizing dismissal of an action only "[i]f the party refuses to comply with the order of the court." 186 Kan. at 23. The case of *Bradley v. Sudler*, 172 Kan. 367, was superseded by the court's interpretation of 7-104 in *Thornburg*, 186 Kan. at 22. *Taylor v. Taylor*, 185 Kan. 324, was discussed by the court and distinguished in *Thornburg* as involving a party who refused to comply with the order of the court, on which ground it also is distinguishable from the present case. Finally, in *Thornburg*, the court cleared the way for its new interpretation of 7-104 by stating that "[a]ny possible implications contrary to this interpretation of the statute in former cases, if any there be, are hereby disapproved." 186 Kan. at 23.

Land O'Lakes cites *Terrell v. Tschirn*, 656 So. 2d 1150 (Miss. 1995). In *Terrell*, facts remarkably similar to those in the present case did not result in stricken pleadings or dismissal of the action. Tschirn's attorney, who was licensed in Louisiana but not in Mississippi, failed to follow the prescribed procedure to appear pro hac vice. Not until after an adverse verdict was returned against him did Terrell move to strike the pleadings and set aside the judgment due to opposing counsel's noncompliance with the Mississippi Supreme Court rule governing foreign attorneys and local counsel. The trial court denied Terrell's motion as untimely. The appellate court affirmed, stating: "Where a party knows or with reasonable diligence may have discovered the Rule 46 violation, the failure to file a motion prior to trial acts as a waiver and procedurally bars him from raising the issue on appeal." 656 So. 2d at 1152. The appellate court likened the situation to one in which a

party who knows of grounds for a judge's recusal waited until after an adverse verdict to raise the issue, and stated: "Terrell should not be allowed to take his chances with a jury and then, after he loses, file his motion." 656 So. 2d at 1152. Tschirn's attorney's noncompliance consisted of failing to submit an affidavit and associating as local counsel a person shown on the Mississippi Bar rolls as being ineligible to practice. The Mississippi Supreme Court believed that "[w]ith reasonable diligence Terrell could have come by this information prior to trial." 656 So. 2d at 1152-53.

Anticipating an argument about the timing of their motion, the Raffertys deny that they acquiesced in Brown's violation, deny that there is any "proof or suggestion" that they earlier had knowledge of the violation, and deny that they have a duty to enforce the statutes and rules regarding foreign attorneys. We do not agree. We find the reasonable diligence standard applied by the Mississippi court has merit and, applied to the present case, would bar the Raffertys' complaint. The absence of a formal motion for admission was obvious—if a motion were in writing, plaintiff's counsel would have received a service copy, and if a motion were made orally at the time courtroom proceedings began, which the statute and rule seem to contemplate, plaintiff's counsel would have been present. Moreover, seemingly contrary to plaintiff's counsel's contention, Supreme Court Rule 207 (1997 Kan. Ct. R. Annot. 213) creates a duty for each member of the bar of this state to report any inaction which would constitute misconduct of an attorney.

We conclude that the trial court did not err in refusing to set aside the verdict and in granting Brown's motion for admission pro hac vice. We interpret the statute and rule to prohibit the court from entertaining any proceedings where a party fails or refuses to comply with the statute and rule after notice. Here, the Raffertys' failure to bring Brown's noncompliance to the attention of the court in a timely manner constitutes a waiver and precludes them from raising the issue on appeal.

The Raffertys next contend the district court abused its discretion by permitting defense witness Nordtvedt to testify about his observation of the traffic signal at the scene of the accident. Appellate review of the trial court's evidentiary rulings is restricted to

considering whether there has been an abuse of judicial discretion. *Koser v. Atchison, Topeka & Santa Fe Ry. Co.*, 261 Kan. 46, 61, 928 P.2d 85 (1996).

Roger Nordtvedt, who has responsibility for certain transportation matters for Land O'Lakes, attended the trial as a corporate representative. He was called as a witness and testified briefly about the cooperative structure of Land O'Lakes, about the company's products, and about the distribution of products and his role in it. He testified that Terry Dossett took a drug test after the accident at issue and passed it. Then, over plaintiffs' counsel's objection, he was permitted to testify that he had visited the scene of the accident the night before he took the stand as a witness, that he had stood on or near the spot where Leonard Tyler and the photographer of Exhibit 49 had been, and that in the dark he could see the glowing color of the activated light around its shield. He noted that Plaintiffs' Exhibit 49 was taken in daylight, and thus differed from what he saw from the same position in the dark. He also stated that he had seen the intersection in daylight, that glowing color of the traffic signals was visible during the daytime, but "absolutely not" as visible as in the dark.

The Raffertys contend that the testimony of Roger Nordtvedt "concerning the traffic lights was incompetent and unfairly surprising" to them. They complain that Nordtvedt had been identified only as a representative of Land O'Lakes so that they could not have anticipated that his testimony would include observations about the accident scene. They contend that they were prevented by "practical difficulties" and "the very real suspicion with which the jurors would greet such testimony" from rebutting Nordtvedt's testimony.

The Raffertys cite *Yorita v. Okumoto*, 3 Hawaii App. 148, 643 P.2d 820 (1982), and *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 715 P.2d 2 (1986), as analogous authorities. Neither is analogous or helpful here.

What the Raffertys seem to find instructive about *Yorita* is that Dr. Lundborg, identified as the hospital's designated representative, was not allowed to testify. In contrast, Nordtvedt, identified as Land O'Lakes' representative, was allowed to testify. There is

no parallel, however. In fact, the trial judge did not allow Dr. Lundborg to be the hospital's designated representative in court, and, moreover, this matter of his status is immaterial to the appellate court's holding and rationale. Dr. Lundborg's testimony, along with that of two other proposed surrebuttal witnesses, was excluded by the trial judge when the hospital, without the trial court's prior approval, reserved evidence relevant to its defense rather than presenting it in its case in chief. The circumstances in the present case are completely unlike those in *Yorita* in that the defendant's witness, Nordtvedt, gave testimony that corroborated the testimony of another defense witness, Leonard Tyler, and tended to show that plaintiffs' photographic evidence was not conclusive. Plaintiffs did not attempt to introduce rebuttal evidence.

In *Hagedorn,* when the plaintiff's expert medical witness was deposed during discovery, his opinions were based on medical records and depositions that he had reviewed. When he arrived in Topeka during the course of the trial, he visited the defendant hospital without identifying himself as connected with the pending case against the hospital. He inspected pertinent areas of the hospital and interrogated nurses about practices and procedures. "Not only was the discovery unauthorized, but the communication between the attorney and the adverse party was in direct violation of the canons of professional ethics." 238 Kan. at 697. Moreover, the expert witness' observations and conversations at the hospital "injected new material as the basis for his opinions," and the defendants did not know what that material might be. 238 Kan. at 696-97. This court concluded that the trial judge "thoughtfully resolved the problem" by permitting the expert witness' deposition, which contained his pre-visit opinions, to be read at trial on behalf of the plaintiff. 238 Kan. at 697. He was not allowed, however, to take the witness stand and testify.

In the present case, there was no unauthorized discovery or ethical violations. Nordtvedt had not been deposed, and there was no issue regarding plaintiffs' expectations for his testimony being supplanted, and, contrary to the Raffertys' protestations, nothing pre-

vented them from presenting rebuttal testimony. The district court did not abuse its discretion in allowing the testimony.

The judgment of the district court is affirmed.