567 So.2d 1193 (1990)
Faye B. ROBERTS and Marion E. Roberts, Sr.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 07-CA-59169.
Supreme Court of Mississippi.
September 26, 1990.
James W. Nobles, Jr., Jackson, Steve Melancon, Fairfax, Va., Jeffrey A. Varas, Hazlehurst, for appellants.
Whitman B. Johnson, III, Steen Reynolds Dalehite & Currie, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and ANDERSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Faye B. Roberts and Marion E. Roberts, Sr., wife and husband, filed suit against Kimberly A. Cassidy, W.M. Cassidy, Jr., and K.J.'s Insulation, Inc. in the Circuit Court for the First Judicial District of Hinds County, Mississippi to recover damages for injuries Faye B. Roberts sustained when the car she was driving was hit in the rear by a van driven by Kimberly Cassidy. After discovery was begun, the Roberts were permitted to amend their complaint to join State Farm Mutual Automobile Insurance *1194 Company as an additional defendant, on an additional claim, i.e., medical insurance, actual damages, and punitive damages for failure to pay the medical insurance.
The lower court granted a motion filed by the Cassidys for separate trials for themselves and State Farm and the case proceeded to trial against State Farm. On November 17, 1987, the trial was held and the jury returned a verdict in favor of State Farm, denying damages to the Roberts. On November 24, 1987, the lower court partially granted the Roberts' motion for JNOV and ordered that $5,000.00, which had been deposited with the court by State Farm, prior to trial, disbursed from July 1983, be disbursed to the Roberts. They have appealed from the judgment of the lower court and State Farm has cross-appealed.

FACTS
On December 8, 1982, Faye Roberts (hereinafter "appellant") was involved in an accident near the entrance of Metrocenter in Jackson, when the car she was driving was struck in the rear by a van driven by Kimberly Cassidy, then aged sixteen (16) years. Appellant's daughter, Vicki Leggett, and Vicki's friend, Melissa Swan, were in the vehicle with appellant and they were all taken to Hinds General Hospital and were x-rayed. The ladies went back to Metrocenter to begin their shopping but Faye began to feel sick at her stomach and her right arm and back began to hurt and she went home to Brookhaven. There she called her insurance agent, Alex Brabham, and told him about the accident; that she was still sick and hurting; and that Kimberly Cassidy's insurance carrier was Carday Associates. He advised her to see a doctor again and not to worry.
The next morning, appellant met her doctor, Doctor Doster, a gynecologist, at King's Daughters Hospital in Brookhaven and was admitted to the hospital. According to appellant, she was x-rayed and the doctors found a large black pone on her right shoulder and on her back in the kidney region. She was hospitalized for three or four days, during which time she was treated for a bruised kidney and was given physical therapy and pain medication. After she was discharged from the hospital, on December 12, appellant called Brabham and told him she was going to join her husband, a riverboat captain on the Mississippi River, and would be gone until approximately December 28.
Upon her return from the trip, the appellant again called Brabham and she stated his attitude had completely changed. He was upset; told her that the daughter, Vicki Leggett, and Vicki's friend, Melissa Swan, had "placed a lawsuit" against her and she should not have any communications until the suit was settled. The appellant then called Vicki and learned that Vicki's lawyer also advised that they should have no communication.
Appellant received through the mail a card asking her to contact State Farm Representative Wretha Dubose. On January 12, 1983, she called Dubose and told her how the accident occurred. Dubose advised that there should be no communication between her and Vicki on account of the lawsuit and told her that they (State Farm) would pay for her doctor and medical bills under the uninsured motorist provision of the insurance agreement. Appellant's next contact with State Farm was on February 17, 1983, when Maurice Whitehead, a State Farm adjuster, called and told her to get together her doctor and medical bills, as well as an estimate to have her car fixed, and they would meet on February 24, to settle her claim. He also told her he had settled Vicki's and Melissa Swan's claims.
On February 24, appellant and her husband, Marion, met with Whitehead and gave him approximately $2,000.00 in medical bills and an estimate for $209.00 to fix her car. Whitehead told them that there was no such company as Carday Associates and that they had found out the van driven by Kimberly Cassidy was insured by State Farm. Appellant further testified that Whitehead told her all he could offer her was $5,000.00, the amount of the policy limit that State Farm would pay for medical bills arising out of an accident under *1195 Faye's policy. Appellant testified that it was her understanding she had to sign a release and settle everything to get the $5,000.00. The meeting ended without a settlement. According to appellant, Whitehead did not explain that she had medical coverage or uninsured motorist coverage and that he only wanted to settle as soon as possible.
Adjuster Whitehead called March 1, 1983 and asked if appellant was ready to settle her claim. She told him that she could not settle then because she was going to be admitted to the hospital the next day. After this contact with Whitehead, appellant had no further contact with State Farm and did not receive payment for the medical bills nor did she receive notice that her claim for them was rejected.
Appellant was referred by Dr. Doster, the gynecologist, to a psychiatrist, Dr. Mary Wheatley. According to Dr. Wheatley, appellant was referred to her and she learned from Dr. Doster that appellant had been in a motor vehicle accident and she was having a good bit of discomfort but did not have a physical injury. Dr. Wheatley, after receiving appellant in her office, referred her to Dr. Songchareon, who admitted her to Doctors Hospital. She was of the opinion that the pain the appellant was having needed to be evaluated, to determine if it was physical or mental.
Dr. Wheatley's diagnosis was adult situational reaction with depression and she prescribed valium and anti-depressants. She identified several causes of appellant's emotional problems, e.g., her continued pain; the fact that she had been told that she could not contact her daughter; stopping the contact with her daughter; and being accused of being in the lawsuit with her daughter. Further, the daughter, Vicki, had gone through a "messy" divorce and, around the first of November, Vicki told appellant that she had decided she was gay and moved in with Melissa Swan, who was a lesbian. On cross-examination, appellant admitted that she had been taking tranquilizers, prescribed by Dr. Doster, for approximately two months prior to the accident to help her deal with "the situation" that she was having with Vicki.
Joe Dawson, claims superintendent with State Farm, was called as an adverse witness and he testified that there was a notation on the claim folder that the claimant/appellant would make a medical payments claim; that a total of $9,703.57 in medical bills was sent by appellant's attorney by October 1983, but they were never paid.
Adjustor Wretha Dubose testified that initially she was told the van was owned by the Cassidys and was insured by Carday Associates. However, after investigating the matter she learned on January 28, 1983, that the van actually was titled to K & J's Insulation and was insured by State Farm. Dubose testified that she did not recall telling appellant not to talk to her daughter and thought it would be illogical to do so because "families are going to talk". Joe Dawson, claims superintendent, testified that neither he nor, to the best of his knowledge, anyone else at State Farm ever represented what the coverage of the K & J's van amounted to.
Approximately two or three months prior to trial, State Farm tendered a check for $5,000.00, the policy limits under the medical payment portion of the insurance policy, to the attorney for the appellant. This check was returned to State Farm. On October 9, 1987, the lower court entered an order permitting State Farm to deposit the money in the registry of the court pending further order of the court.
On November 17, 1987, a trial was held and the issues were submitted to the jury, which returned a verdict in favor of State Farm against the appellant and her husband. On November 23, 1987, the appellant filed a motion for JNOV or new trial pursuant to MRCP 50(b) on the ground that the verdict was against the great weight of the evidence, since State Farm owed $5,000.00 under the contract, had deposited that amount of money with the court and since there were sufficient medical bills to indicate that State Farm owed the Roberts the $5,000.00 plus interest from July 1983. The lower court entered an order on February *1196 25, 1988, overruling the appellant's motion for new trial but granting the motion for partial JNOV as to the medical payments coverage of $5,000.00 and interest from July 1983.

LAW

I.

DID THE LOWER COURT ERR IN REFUSING PLAINTIFF'S REQUEST FOR A PEREMPTORY INSTRUCTION ON THE ISSUE OF BREACH OF CONTRACT BY STATE FARM IN REFUSING TO PAY MEDICAL PAYMENTS BENEFITS?

II.

WAS THE VERDICT OF THE JURY AGAINST THE GREAT AND OVERWHELMING WEIGHT OF THE EVIDENCE THAT STATE FARM DID NOT BREACH THE INSURANCE CONTRACT WHEN IT REFUSED TO PAY MED-PAY BENEFITS AFTER BEING REQUESTED TO DO SO BY ROBERTS?
Three issues were presented to the jury by the plaintiff/appellant for decision, i.e., (1) breach of contract, (2) actual damages by reason of breach of contract, (3) punitive damages resulting from the bad faith of appellee in not paying the medical payments provided by Section 2, Coverage C of the insurance policy. Appellant contends under issue one that the lower court erred in refusing appellant's request for a peremptory instruction on the issue on breach of contract. However, the appellant requested instruction P-1 as follows:
The Court instructs the Jury to return a verdict for the Plaintiffs and against the Defendant, State Farm Mutual Automobile Insurance Company.
The peremptory instruction requested by the appellant was a general peremptory instruction which covered all of the above three mentioned issues, not just breach of contract alone. The verdict of the jury follows:
We, the jury, find for the defendant, State Farm Mutual Automobile Insurance Company, against the plaintiff, Faye B. Roberts.
No actual or punitive damages
No accrued interest on medical expense.
There was another verdict of the jury in practically the same language covering appellant's husband, Marion E. Roberts, Sr.
Appellants sought actual damages because of her inability to talk with her daughter, Vicki, and because of her depression concerning the situation about Vicki's private life. Alleging the absence of an arguable, reasonable or justifiable reason for refusing to pay the valid and legitimate claim, appellant sought punitive damages for breach of contract. See Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1978); Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985); Southern United Life Ins. Co. v. Caves, 481 So.2d 764 (Miss. 1985).
There was slight damage to appellant's car. The fact that the initial medical bills of $2,000.00 were from a gynecologist and psychiatrist rather than a family physician, orthopedist, or internist, may have had some weight on the jury's consideration of State Farm's delay in the payment of the medical bills. Appellate courts give great weight and deference to juries on findings of fact and will not set aside verdicts unless they are against the overwhelming weight of the evidence and credible testimony.
Joe Dawson, State Farm claims superintendent, testified that after taking appellant's deposition in January 1986, he determined that there was sufficient verification to pay the $5,000.00 medical bills, which was the limit under the policy. State Farm concedes that there was never any actual refusal to pay the medical bills and that, at worst, there was delay in the payment.
Approximately two months before trial, appellee sent a check for policy limits of $5,000.00 to the appellant's attorney. However, this check was returned unnegotiated. State Farm petitioned the court for authority to pay the limits into the registry of the court, which was permitted by a court order.
*1197 As stated, the verdict of the jury was for the appellee, against appellant, Faye B. Roberts, and specifically provided "no actual or punitive damages" and "no accrued interest on medical expenses". The verdict against Marion B. Roberts and in favor of State Farm provided "no actual or punitive damages".
The lower court sustained a motion for JNOV and awarded to appellant $5,000.00 which had been paid into the registry of the court and which was the limit of the medical payments, together with lawful interest thereon. Therefore, the lower court, as a matter of law, awarded what the appellant was justly entitled to even though the jury declined to award actual damages and punitive damages. Those issues were fairly presented to the jury.
We find no merit in the appellee's cross-appeal.
Therefore, the judgment of the lower court is affirmed on direct appeal and on cross appeal.
AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.