McMILLIN, C.J.,
for the court.
¶ 1. This is a case involving a personal injury claim asserted by Susan Whiddon against United Parcel Service and its employee, Jessie D. Smith. Robert Whiddon, the husband of Susan Whiddon, was an additional plaintiff, asserting a loss of consortium claim. The claim arose out of a motor vehicle accident that occurred on a public highway in Lamar County. The jury returned a verdict in favor of the defendants and the Whiddons have appealed. They raise issues concerning alleged improperly admitted expert testimony by the defendant’s accident reconstructionist and certain complaints about the manner in which the jury was instructed. We conclude that these issues are without merit and, therefore, affirm the circuit court judgment.
I.
Facts
¶ 2. For purposes of our analysis, we can assume that the facts concerning the accident itself are not substantially in dispute, except for some variations in estimations of the speed of the vehicles involved in the accident. The plaintiffs theory of the accident that finds support in the evidence was that the accident occurred when a vehicle traveling in the same lane of travel as the Whiddon vehicle struck Whiddon from the rear and propelled her into a vehicle in front of her and then into the opposing lane of travel, where she was struck by a United Parcel Service delivery truck being driven by Smith. The Whiddons’ theory of recovery against Smith and UPS was that Smith could have avoided the head-on collision had he been traveling at a lower speed and been more attentive to oncoming traffic.
¶ 3. The defense presented the testimony of the driver of the vehicle that struck Whiddon from the rear. He testified that Whiddon may have already begun to swerve out into the oncoming lane of traffic when he struck her. He also testified that, according to his recollection, “my crash and the crash with her vehicle with the UPS truck was- — -I mean, almost at the same time.”
¶ 4. The Whiddons based their claim of negligence against Smith almost entirely on the expert testimony of A.K. Rosenhan, an engineering professor at Mississippi State University. In response to a rather lengthy hypothetical question that posited a number of “facts” that Mr. Rosenhan was to assume as true, this witness indicated his opinion that Smith was traveling too fast for the conditions that existed at the time, and that this “contributed” to the accident in which Whiddon was injured. Rosenhan testified that he assumed a speed of fifty miles per hour for the UPS vehicle, but he made no effort in his testimony to reconstruct the amount of time that Smith had to react from the time Whiddon’s vehicle was suddenly impelled into his lane of travel, nor did Rosenhan purport to calculate what speed would have permitted Smith to stop his vehicle in time to avoid a collision.
¶ 5. The defense also presented an accident reconstruction expert who testified to making certain calculations regarding the speed of the two vehicles involved in the second impact after Whiddon had been struck from the rear. The expert concluded that, making certain assumptions regarding the necessary time for a normal person to see a situation and react appropriately, Smith simply did not have ample time to react from the time the Whiddon *1063 vehicle was unexpectedly impelled into his lane of travel until he struck it.
¶ 6. The jury returned a verdict in favor of Smith and United Parcel Service.
II.
Admissibility of the Defendant’s Expert Witness Testimony
¶ 7. After the defense expert witness had testified at some length on direct regarding his methodology in determining causation of the accident, he was subjected to cross-examination. During the course of that cross-examination, he testified that, at some point in making his calculations regarding Smith’s time — or lack of time— to react, he had assumed that the Whiddon vehicle was traveling at about ten miles an hour after being struck from the rear and impelled into Smith’s lane of travel. It developed that this speed estimate, and certain other data used by the expert in making his calculations, had been derived from his review of a number of extrajudicial statements given by various individuals and from an interview with the officer who investigated the accident, and that certain of those facts did not have an evidentiary basis in the record of the trial itself.
¶ 8. At that point, plaintiffs counsel sought to have the testimony stricken from the record on the basis that the opinion was based on facts not in the record and not the type of facts customarily relied upon by an expert in forming an opinion as to the issue in dispute. Morley v. Jackson Redevelopment Authority, 632 So.2d 1284, 1294 (Miss.1994). The trial court denied the motion, and Whiddon now urges that this was reversible error in that it permitted the jury to rely on expert opinion improperly admitted into evidence.
¶ 9. It has been said that expert testimony cannot become simply a conduit by which hearsay evidence not otherwise admissible is put before the jury. Id. For example, in this instance, the argument is that there was no evidence before the court indicating that the speed of Whid-don’s vehicle in the moments before impact was ten miles per hour, and, therefore, any contention that this was a fact was necessarily based on either speculation or on hearsay evidence heard by the expert in the course of his investigation.
¶ 10. There is no particular mystery in what an accident reconstructionist attempts to do in a trial such as the one now before us. His role is readily apparent from the name commonly associated with this specialty, and that role is to attempt to theoretically reconstruct from the physical evidence available what factually transpired in an accident. Those determinations are, at their most basic, nothing more than scientific calculations based on the law of physics. Speed before impact can often be reconstructed with some precision by a measurement of skid marks and knowledge of such matters as the weight of the vehicle, the condition of the tire treads, and the conditions of the road surface at the critical time. In those circumstances, an expert can be helpful to the jury in making its determinations as to speeds or in assessing the credibility of a witness who might claim that the relevant vehicle speeds were something inconsistent with the available physical evidence.
¶ 11. In other instances, however, the actual physical data may, for whatever reason, be unavailable for analysis by the expert. In such instances, the only available evidence may be the estimates of eye-witnesses. In those cases, the only possible way that an expert can offer helpful information is to be asked to assume the truth of a witness’s testimony in a hypothetical question and to arrive at an opinion as to what would physically have *1064 transpired at the accident site in that circumstance. This is true because a recon-structionist expert cannot make the ultimate determination as to credibility of those offering their estimates of such variables as time and speed in the moments leading up to a motor vehicle collision.
¶ 12. In this case, the expert offered no physical evidence to indicate the speed of Whiddon’s vehicle as it came across the centerline and into Smith’s lane of travel and there had been no testimony at trial indicating that the vehicular speed was ten miles per hour. Therefore, it seems clear that there was no reasonable basis for the expert to make such an assumption in attempting to reconstruct the reaction time available to Smith once he became aware, or should have become aware, of the presence of the Whiddon vehicle in his path of travel. Clearly, in the apparent absence of physical evidence of Whiddon’s speed, the proper course of the proof, if the speed of Whiddon’s vehicle was critical to the expert’s opinion testimony, would have been to call a witness to testify to that witness’s estimate of speed, and then formulate a hypothetical question to the expert asking him to assume the truth of that witness’s testimony. To merely accept as fact an extrajudicial estimate of speed not offered into evidence at trial is certainly not the “type [of facts] reasonably relied upon” to formulate an after-the-fact opinion as to what transpired in an accident. To the extent that this expert’s opinion as to Smith’s reaction time was premised upon a calculation that Whiddon was traveling at the rate of ten miles per hour, then the introduction of his opinion was error.
¶ 13. The issue becomes, therefore, whether this error requires reversal of this jury verdict. We conclude that it does not. It is indisputably clear from reviewing this record that both so-called experts who testified at this trial offered little information helpful to the jury. Rosenhan’s testimony consisted of nothing much more than offering his view that Smith was traveling too fast taking into account the road conditions in existence at the time. However, he offered no evidence as to what a proper speed would have been that would have permitted Smith to stop his vehicle in the few seconds available to him after the Whiddon vehicle was struck and, without warning, impelled into his lane of travel. Taking Rosenhan’s rather simplistic views regarding Smith’s operation of his vehicle and the duty he felt was owed to approaching motorists, and following them to a logical conclusion would suggest that a driver has an absolute obligation to operate his vehicle at a speed that would, in every case, permit him to stop before a collision whenever an approaching vehicle suddenly crosses the centerline. As for the defense expert, it is fair to say that his opinions were, through a properly vigorous cross-examination, revealed to be based upon assumptions as to relative speeds of the two vehicles and other disputed facts that were, at the least, subject to substantial disagreement. Certainly, the jury was capable of understanding that if, sitting in its capacity as fact-finder, it chose to reject the expert’s assumptions as to the underlying critical items of time, speed, and distance, then the expert’s views were singularly unhelpful in the deliberation process.
¶ 14. In point of fact, our review of the record indicates that the jury received sketchy evidence of what actually transpired except for the unmistakable fact that Whiddon’s vehicle was suddenly and without warning struck from the rear and impelled into Smith’s lane of travel. There is no dispute that within just a few seconds — the exact number being the subject of “dispute” between dueling expert accident reconstructionist — the two vehicles *1065 met in a head-on collision. The plaintiffs case on liability consisted of the defendant Smith’s testimony as an adverse witness that did little or nothing to support the plaintiffs theory of recovery, and the plaintiffs expert reconstructionist whose testimony consisted essentially of a conelu-sory opinion that Smith should have been driving slower because the road was wet. Upon reviewing the evidence, the jury concluded that Whiddon had failed in her burden to prove by a preponderance of the evidence that Smith was negligent in his operation of his vehicle to the point that the collision of his truck with the Whiddon vehicle could have been avoided but for his negligence. The expert testimony of the defense expert appears to be more properly characterized as unhelpful to the jury in its deliberations on the core issues rather than misleading or prejudicial to such a degree that the validity of the jury’s verdict could reasonably be called into question. To hold otherwise would suggest, a level of susceptibility by this jury to being influenced by plainly unhelpful information that this Court is unwilling to concede.
III.
Instruction 15
¶ 15. Whiddon complains of the court’s decision to grant a requested defense instruction to the effect that Whid-don would have been negligent had she been driving her car in the opposing lane of travel at the time of the accident. Whiddon now complains that this instruction was error in that it amounted to a peremptory instruction of negligence on her part. We disagree. One of the defendants’ alternate theories of defense was that, even in the event Smith were found to be negligent in failing to stop before the point of impact, Whiddon was also contrib-utorily negligent in pulling her vehicle into the wrong lane of travel. There was some factual support for this assertion in the testimony of the driver of the car in the rear of Whiddon, who said that he believed that, at the time he hit Whiddon from the rear, she had already begun to swerve over into the oncoming lane of travel in an effort to avoid a rear-end collision with other vehicles stopped in front of her.
¶ 16. Whiddon’s principal complaint is that the instruction appears to assign some measure of negligence to her based purely on the presence of her vehicle in Smith’s lane of travel even if the force that propelled her there was provided by the vehicle that struck her from the rear and was, therefore, a circumstance beyond her control. We cannot agree. Both parties are entitled to have the jury instructed as to the law as it applies to their competing theories of the case. Reese v. Summers, 792 So.2d 992, 994 (¶ 1) (Miss.2001). Certainly, there was no way for the defense to determine in advance how the jury might resolve the factual circumstances surrounding the accident on competing evidence, and it had to deal with the possibility that the jury might conclude that Smith did, in fact, have adequate time to see Whiddon’s vehicle and either avoid collision or slow to the extent that the severity of the impact would have been substantially lessened. In that circumstance, the defense was entitled to have the jury consider whether Whiddon’s own negligence in following the vehicles in front of her too closely and having to swerve into the oncoming lane of travel to avoid her own rear-end collision might have contributed to the fact of, and the severity of, the resulting accident. The instruction, in order to require any action by the jury in regard to Whiddon’s own purported negligence, informed the jury that the movement of her vehicle into the oncoming lane would have to be the result of her “failing in the exercise of reasonable *1066 care to drive her vehicle on the right half of the roadway.” We believe that the jury was fully capable of grasping the concept that if, in fact, the sole reason that Whid-don’s vehicle moved into the oncoming lane of traffic was because it was suddenly and violently struck in the rear by another vehicle, that the movement of Whiddon’s vehicle across the centerline was not due to her own failure to use reasonable care in the vehicle’s operation. We find that this instruction was intended to instruct the jury as to the law in the event the jury resolved the disputed issues of fact in one particular way, i.e., that Whiddon was at least partially at fault in the circumstance of her vehicle suddenly veering into the wrong lane of travel. The mere fact that Whiddon’s theory of recovery did not concede this to be the case could not serve as a bar to the defendants’ right to have the jury instructed when there was, in fact, evidence in the record to support the proposition that Whiddon’s own actions played some role in the direction her vehicle took in the seconds before the accident. Glorioso v. Young Mens Christian Ass’n of Jackson, 556 So.2d 293, 296 (Miss.1989).
IV.
Instruction 14
¶ 17. Whiddon also complains of the trial court’s decision to give the defendant’s requested instruction ultimately given as Instruction 14 in the following form:
If you find from a preponderance of the evidence in this case that the Defendant Jesse Smith committed no negligent act that was the sole proximate cause, or a proximate contributing cause of the Plaintiffs’ loss or damages, 'but the Plaintiffs damages are due directly and exclusively to a cause which .could not have been prevented by the exercise of reasonable care by Jesse Smith, the occurrence of June 17, 1997 was an unavoidable accident for which the Defendants are not liable, and your verdict must be for the Defendants.
¶ 18. Whiddon claims that this instruction was confusing because it was vague and consisted solely of an abstract statement of the law unaccompanied by any direction to the jury as to how that abstract statement related to the particular facts of this case. Instructions that are nothing more than abstract announcements of purportedly applicable principles of the law are, beyond question, unhelpful to the jury. In their better form, an instruction undertakes to announce a possible concrete set of facts that finds support in the evidence and then instructs as to what result the law requires if the jury, in fact, concludes that the facts as are posited in the statement. Pickering v. Industria Masina I Traktora (IMT), 740 So.2d 836, 844 (¶ 34) (Miss.1999); Munford Inc., v. Fleming, 597 So.2d 1282, 1286 (Miss.1992).
¶ 19. Nevertheless, jury instructions are not considered in isolation. Rather, when reversal is sought on the basis that the jury was improperly instructed, the reviewing court must read all of the instructions and determine whether, on that basis, it is satisfied that the jury was adequately and properly instructed on the legal principles necessary to properly resolve the case once it has made its threshold findings resolving disputed issues of fact. Lovett v. Bradford, 676 So.2d 893, 896-97 (Miss.1996). When read in their entirety, we are satisfied that the instructions properly framed the issues of law for the jury; those issues in the final analysis being relatively straightforward and relating almost exclusively to the question of whether or not Whiddon’s vehicle appeared in Smith’s lane of travel enough in advance of the collision that, had Smith been operating at a reasonable rate of speed and giving due regard to the *1067 circumstances, he would have been able to stop before striking Whiddon’s vehicle. The jury, by its verdict, indicated that it accepted as true the proposition that, as one witness testified, that the two collisions occurred “almost at the same time,” and that nothing Smith did contributed to second impact. We do not find Instruction 15 so confusing or misleading as to suggest that the jury’s verdict was based on a fundamental misunderstanding of its role or the applicable law.
V.
Instruction 13A
¶ 20. Whiddon complains that instruction 13A was improper as being abstract and peremptory against the plaintiffs on the issue of proximate cause. No similar objection was lodged at the trial level when the instructions were considered and the parties were offered the opportunity to object to any proposed instructions. Such claims of impropriety in the instructions are deemed waived unless presented to the trial court at a time when any potential error can be avoided. Ducker v. Moore, 680 So.2d 808, 810 (Miss.1996). Therefore, this issue may not be raised for the first time on appeal. Id.
¶ 21. Additionally, as we have previously observed, our review of the various instructions in their entirety leaves us convinced that they adequately, though perhaps not perfectly, charged the jury as to the law relating to the critical, but rather straightforward, fact on which this case turned. On that critical issue there was a substantial amount of evidence— discounting for the moment the largely unhelpful speculations of the dueling accident reconstructionists — indicating that the moment of impact came almost simultaneously with the previous collision that impelled Whiddon into the oncoming lane. On that evidence, the jury, not surprisingly, found for the defendants and we have discovered nothing in the issues raised on appeal to suggest the necessity for disturbing that jury verdict.
Conclusion
¶ 22. Undergirding all of our reasoning in this opinion is the foundational principle that, once a case is fairly— though not necessarily perfectly — tried to a jury and the jury has resolved the disputed issues of fact and arrived at its verdict, that verdict is entitled to substantial deference and may not be upset on appeal absent compelling reasons to do so. Roberts v. State Farm Mut. Auto. Ins. Co., 567 So.2d 1193, 1196 (Miss.1990). We find nothing raised in this appeal regarding perceived errors in the conduct of this proceeding so prejudicial to a fundamentally fair trial of the issues as to suggest that we should disturb this jury verdict.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.