THOMAS, J., for the Court.
¶ 1. Matt Brown was granted a divorce from Stephanie Cummings Brown on the grounds of habitual cruel and inhuman treatment. Stephanie was awarded $300 per month rehabilitative alimony for thirty-six months. Stephanie appeals the chancellor’s decision asserting the following issues as error:
I. THE TRIAL COURT ERRED IN GRANTING A DIVORCE TO MATT ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.
II. THE TRIAL COURT ERRED IN DENYING STEPHANIE’S REQUEST FOR SEPARATE MAINTENANCE. ... - .
Matt cross-appeals on the following issue:
III. THE TRIAL COURT ERRED IN ORDERING MATT TO PAY REHABILITATIVE ALIMONY IN THE AMOUNT OF $300.00 A *590 MONTH FOR THIRTY-SIX MONTHS.
Finding error, we reverse and render on the grant of divorce and remand for separate maintenance proceedings.
FACTS
¶ 2. Matt and Stephanie were married on November 20, 1993, and lived together until they separated May 26, 2000. At the time of their separation, Matt was employed as a teacher, coach, and athletic director and Stephanie was employed as a computer programmer. They had no children. Both Matt and Stephanie had bachelor’s degrees earned before their marriage. Matt received a master’s degree in education administration in 1998. Their incomes were very similar at the time of trial.
¶ 3. Matt sought a divorce on the ground of habitual cruel and inhuman treatment based upon physical and mental abuse that he alleged to have occurred during their marriage. Matt testified that there were no less than four physical attacks by his wife. One of these occurred at his place of employment. Stephanie admitted to only one such conflict which occurred a few months before their separation in which she slapped Matt. Matt admitted to shoving Stephanie into the washer and dryer on the same occasion.
¶ 4. It was at approximately the time of this conflict that Stephanie found out about Matt’s relationship with another woman. Matt refused to answer under Fifth Amendment constitutional grounds as to whether a sexual relationship with the woman was the reason for the separation and divorce. Matt also alleged that Stephanie hated his profession and constantly berated him for it which ruined the marriage for him.
¶ 5. Stephanie did not desire a divorce and she requested separate maintenance and Matt’s return to the marital home. After conducting a full trial on the matter, the chancellor granted Matt a divorce on the ground of habitual cruel and inhuman treatment. In his ruling, the chancellor adopted the parties stipulation as to the disposition of assets and debts accumulated during the marriage and awarded Stephanie rehabilitative alimony in the amount of $300 per month for thirty-six months.
ANALYSIS
I. DID THE TRIAL COURT ERR IN GRANTING A DIVORCE TO MATT ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
¶ 6. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998). (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284(¶ 11) (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)).
¶ 7. Stephanie asserts that there was insufficient evidence to support the chancellor’s awarding of a divorce to Matt on the ground of habitual cruel and inhu *591 man treatment. The ground of habitual cruel and inhuman treatment must be established by a preponderance of the evidence. Daigle v. Daigle, 626 So.2d 140 (Miss.1993). In Daigle, the Mississippi Supreme Court stated as follows:
In order to establish habitual, cruel and inhuman treatment, the evidence should prove conduct that either endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.
Daigle, 626 So.2d at 144. (quoting S. Hand, Mississippi Divorce, Alimony and Child Custody §§ 4-12 (2d ed. Supp.1991)). Findings of fact are to be made by the chancellor. Tice v. Shamrock GMS Corp., 735 So.2d 443, 444 (¶ 3) (Miss.1999). As to those findings of fact, an appellate court is obligated to afford the chancellor substantial deference and we may not set aside the chancellor’s decision unless we are satisfied that her findings were against the substantial weight of the credible evidence. Steen v. Steen, 641 So.2d 1167, 1169 (Miss.1994).
¶ 8. Many examples can be found of conduct which does not meet the requirements of habitual cruel and inhuman treatment. In Gallaspy v. Gallaspy, 459 So.2d 283 (Miss.1984), the court determined that the test for habitual cruel and inhuman treatment had not been met where a husband constantly criticized his wife, withheld praise and support from his children, and placed a higher priority on his parents’ estates than his marriage. Gallaspy, 459 So.2d at 285. In Kergosien v. Kergosien, 471 So.2d 1206 (Miss.1985), a wife’s financial irresponsibility and abandonment of family duties, even when considered in light of occasional “acts of cruelty” directed at the children, did not justify the granting of a divorce upon the grounds of habitual cruel and inhuman treatment. Kergosien, 471 So.2d at 1208, 1210. Similarly, continued embarrassing financial practices peppered with perceived verbal and psychological abuse failed to suffice in Wilson v. Wilson, 547 So.2d 803, 804 (Miss.1989). And subsequently, in Daigle, the supreme court affirmed the denial of a husband’s petition for divorce based on his wife’s lack of intimacy, “constant hassling,” and isolated outbursts of rage. Daigle, 626 So.2d at 144.
¶ 9. Examining the case at hand, this Court must determine whether the lower court’s limited finding is sufficient for a divorce on the grounds of habitual cruel and inhuman treatment. The chancellor found that “clearly, [Matt] was not harmed by the physical contact or mental stress resulting from the arguments with Defendant and the Court cannot find such conduct endangered his life.” Since the lower court did not find in favor of Matt’s assertions of physical misconduct, it granted Matt a divorce based on the following:
[T]he Court finds the conduct of [Stephanie] in questioning the commitment of [Matt] to his profession, and the resulting arguments, and physical conduct, continued over a course of the marriage, to come within the definition of being so revolting and infamous so as to have the effect of destroying the marriage for the Plaintiff.
This finding is not supported by the evidence. Both Matt and Stephanie testified that the “resulting arguments and physical conduct” occurred over the few months prior to their separation, after Stephanie discovered Matt’s involvement with anoth *592 er woman. This was not over the “course of the marriage” as the chancellor found.
¶ 10. We are left, therefore, with only the finding that Stephanie questioned Matt’s commitment to his profession. At best, this amounts to a finding of “mere unkindness or rudeness,” which is not enough for divorce under the ground of habitual cruel and inhuman treatment. Churchill v. Churchill, 467 So.2d 948, 951 (Miss.1985). There is no evidence that any physical confrontations occurred due to Stephanie’s criticism of Matt’s work. In Hassett v. Hassett, 690 So.2d 1140, 1146 (Miss.1997), the court held that “bullying, intimidation, and constant criticism [of a wife’s performance of household duties] does not fulfill the requirements of a divorce on the grounds of habitual cruel and inhuman treatment.” (citing Steen v. Steen, 641 So.2d 1167, 1170 (Miss.1994); Gallaspy, 459 So.2d at 285).
¶ 11. Therefore, the evidence in the record is not enough for a finding of habitual cruel and inhuman treatment. For these reasons, we hold that the chancellor’s decision to grant a divorce on the ground of habitual cruel and inhuman treatment must be reversed.
II. DID THE TRIAL COURT ERR IN DENYING STEPHANIE’S REQUEST FOR SEPARATE MAINTENANCE?
III. DID THE TRIAL COURT ERR IN ORDERING MATT TO PAY REHABILITATIVE ALIMONY IN THE AMOUNT OF $300.00 A MONTH FOR THIRTY-SIX MONTHS?
¶ 12. We will address these two issues concurrently. As stated in Owens v. Owens, 234 Miss. 261, 268, 106 So.2d 59, 62 (1958), “There is little difference between a suit for separate maintenance and a suit for alimony and substantially the same principles of law apply in fixing an amount.” “The power to grant separate maintenance to a wife [is] based on (a) separation without fault on the wife’s part, and (b) willful abandonment of her by the husband with refusal to support her.” Thompson v. Thompson, 527 So.2d 617, 621 (Miss.1988) (quoting Etheridge v. Webb, 210 Miss. 729, 743, 50 So.2d 603, 607 (1951)).
¶ 13. The chancellor here awarded Stephanie rehabilitative alimony in the amount of $300 a month for thirty-six months because of her efforts during the marriage which allowed Matt to receive his master’s degree with a lifelong benefit. Alimony originates from an obligation of one spouse to provide support for the other spouse. East v. East, 493 So.2d 927, 931 (Miss.1986). Separate maintenance is a judicial command to one’s spouse to resume cohabitation or to provide support. Williams v. Williams, 528 So.2d 296, 298 (Miss.1988).
¶ 14. The order granting alimony of course must be vacated in view of the lack of grounds for a divorce. Separate maintenance, however, should be considered for Stephanie. There was no evidence that the separation was completely her fault, and she is willing is to resume the marriage instead of separate maintenance if possible. A grant of separate maintenance should be considered by the chancellor. We remand for further proceedings on this issue. On remand, the lower court should apply the factors found in Gray v. Gray, 484 So.2d 1032, 1033 (Miss.1986), to determine what, if any, amount of separate maintenance Matt should pay Stephanie.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. *593 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.