THOMAS, J.,
for the Court.
¶ 1. This case involves a dispute between sisters over their mother and her estate. The trial court ruled against the appellants, Margaret Loyd Lang and Clyde Lang. Aggrieved, Margaret perfected an appeal to this Court and asserts the following issues:
I. THE CHANCELLOR ERRED BY FINDING THAT APPELLANT MARGARET LANG PROCURED HER OFFICE OF TRUST THROUGH UNDUE INFLUENCE AND FURTHER ERRED BY REMOVING HER AS TRUSTEE.
II. THE CHANCELLOR ERRED BY FINDING THE TEMPORARY SUPPORT TO BE UNREASONABLE.
III. THE CHANCELLOR ERRED BY FINDING APPELLANT LANG TO HAVE VIOLATED HER FIDUCIARY DUTIES AS TRUSTEE.
IV. THE CHANCELLOR ERRED BY ORDERING AN ACCOUNTING.
V. THE CHANCELLOR ERRED BY CANCELING THE WARRANTY DEED FROM APPELLANT MARGARET LANG TO APPELLANT CLYDE LANG.
VI. THE CHANCELLOR ERRED BY DISMISSING APPELLANT CLYDE LANG’S COUNTER-COMPLAINT FOR SLANDER OF TITLE AND ASSESSING COURT COSTS TO THE APPELLANTS.
Finding no error, we affirm.
FACTS
¶ 2. Annie Mae Loyd was born in April 1908, and at the time of appeal was ninety-two years old. She had been married to Vernon Loyd who died in 1956. Besides Annie, five children survived Vernon: Vernon Loyd, Jr., Margaret Elizabeth Loyd Lang, Edith Cecille Loyd Lutz, Charles Loyd and William Gerrard Loyd. The youngest, William Gerrard Loyd, passed away in 1992. From late 1965 on, Margaret was a co-signer on her mother Annie’s bank accounts. Margaret assisted Annie with her business dealings from that time forward.
¶ 3. When Vernon Loyd, Sr. died, he owned two tracts of land: a fifty-six acre tract which he owned together with Annie Mae Loyd with full rights of survivorship, and a forty acre tract which was titled in his name alone. The forty acre tract passed to Annie and the children, share and share alike. At the request of Annie, all of the children except Margaret signed a quit claim deed conveying the forty acre tract to their mother. The quit claim deed was filed without Margaret’s signature on May 10, 1988. From about 1986 until 1998, Annie lived in a trailer purchased for her by her daughter Edith Lutz. Athough *366 Annie Mae Loyd contributed to the purchase price by giving a down payment of $1,700, the monthly payments on the trailer were made by Edith and her husband.
¶ 4. In 1992, Clyde and Margaret Lang had attorney Scott Farnsworth prepare living trusts for them. In 1993, Vernon Loyd, Jr., having noticed a change in Annie including forgetfulness and hallucinations, suggested to Margaret that a trust should be established to take care of her. On May 17,1993, Clyde and Margaret Lang transported Annie to attorney Farnsworth’s office for the purpose of establishing the Annie Mae Loyd Trust. Margaret Lang attended the meeting between Annie Mae Loyd and Farnsworth, then Farnsworth met with Annie Mae Loyd alone for approximately fifteen minutes. Over the next week, Farnsworth drafted the “Declaration of the Annie Mae Loyd Trust, Memorandum of Agreement of Annie Mae Loyd Trust, Last Will and Testament of Annie Mae Loyd, Medical Care Power of Attorney, Living Will, and General Power of Attorney.” Additionally, Farnsworth prepared a quit claim deed which conveyed all of Annie Mae Loyd’s real property to Margaret Lang as trustee for the Annie Mae Loyd Trust. On May 24,1993, Margaret Lang again transported Annie Mae Loyd to Farnsworth’s office for the purpose of executing the trust documents. Margaret Lang was present when all of the trust documents were executed.
¶ 5. Annie Mae Loyd’s last will and testament provides that, after payment of expenses, all of her property was given and devised to the trustee of the Annie Mae Loyd Trust, to be held and disposed of in accordance with the terms, covenants and conditions of the trust. The declaration of trust of the Annie Mae Loyd Trust provides that upon Annie’s death, any remaining principal, together with any accrued and unpaid income thereon, shall be paid and distributed as follows: $1,000 to be divided among the issue of William G. Loyd, per stirpes, and the residue to Margaret Lang, Vernon W. Loyd, Edith Ce-cille Loyd Lutz and Charles Ronald Loyd, equally. The declaration of trust of the Annie Mae Loyd Trust appoints Margaret Lang as trustee, and upon her death or if she should cease to serve, appoints Vernon W. Loyd, Cecille Lutz, and Charles Ronald Loyd, in that order, as successive trustees. Margaret Lang testified that no copies of any of these documents were ever furnished any of Mrs. Loyd’s other children because Annie Mae Loyd was a very secretive person who did not want the other children to know her business.
¶ 6. In early 1995, Margaret’s husband Clyde, after receiving bids, sold some of the timber on his land to Dixieland Forest Products of Meridian, Mississippi. Margaret Lang, as trustee, thereafter sold the standing timber belonging to the Annie Mae Loyd Trust to Dixieland Timber Products. Clyde Lang initialed the contract between Dixieland Forest Products and the Annie Mae Loyd Trust. He also authorized Dixieland Forest Products to clear cut the timber on the Annie Mae Loyd Trust property. Dixieland Forest Products sent the payment for Annie Mae Loyd Trust’s timber to Clyde Lang who delivered the checks to Margaret Lang. Theses checks were later endorsed by Annie Mae Loyd and Margaret Lang.
¶ 7. On April 21, 1995, Margaret Lang deposited two Dixieland Forest Product checks for timber cut on the Annie Mae Loyd Trust property in the amounts of $11,222.99, and 11,079.92, together with a sum of $2,999.51, withdrawn from Annie Mae Loyd’s savings account, into an account in the name of Margaret Elizabeth Loyd Lang. The total sum deposited was $26,302.42. Margaret Lang then used this money to purchase a certificate of deposit *367 in her name. Margaret Lang held this CD for more than three years. In February 1998, Annie moved in with Margaret and Clyde and Edith sold the trailer in which Annie resided. On November 18, 1998, Margaret Lang redeemed the CD, before maturity, and after making deductions for other expenses, including $50 to Farns-worth, withheld for herself $14,400. The CD at the time of redemption was worth $32,428.62. The invoice prepared to account for the $14,400 payment indicated that it was for costs of caring for her mother at $1,200 per month for one year. After these deductions Margaret deposited $16,204.62 into the Annie Mae Loyd Trust account.
¶ 8. On September 30, 1998, Margaret Lang, as trustee, conveyed all of the real estate owned by the Annie Mae Loyd Trust to her husband, Clyde Lang. Two estimates were obtained, and the higher was used for valuing the property. The deed transferring this property was prepared by Farnsworth, and the sale price of the property, $64,000, was paid by check drawn on the joint account of Mr. E. Lang and Elizabeth L. Lang. The check was signed by (Margaret) Elizabeth Lang and endorsed by (Margaret) Elizabeth Loyd Lang, trustee of the Annie Mae Loyd Trust.
¶ 9. Trustee Margaret Lang testified that the reasons she sold the land to her husband included: (1) Mrs. Loyd was tired of being “harassed” by her other children. This harassment was punctuated by the allegation that Mrs. Loyd’s daughter, Edith Lutz, was repeatedly asking for her inheritance. Mrs. Lutz denies ever demanding her inheritance; (2) Annie Mae Loyd was upset after February 1998 when Edith Lutz sold the trailer that Annie had previously resided in, without reimbursing her for her share of the purchase price; and (3) Annie Mae Loyd requested Clyde Lang to purchase the property in order to allow him to invest his money in the property and to make it productive.
¶ 10. Edith Cecille Loyd Lutz, Margaret’s sister, became upset with the management of the trust, and filed a petition for appointment of conservator which was granted by the lower court. Margaret filed a motion to set aside and an order was entered which appointed Margaret and Edith co-conservatrixes. This created a dispute which led to litigation. Testimony at trial established that Annie suffered from hallucinations and some form of dementia from as early as 1993, with some testimony indicating as early as 1989. After hearing the evidence, the chancellor found in part that Margaret had violated her fiduciary duty as trustee, that she should be removed as trustee, that a warranty deed from Margaret to her husband of real property contained in the trust should be cancelled, and ordered Margaret to make an accounting to the court and to reimburse the trust some $14,400.
STANDARD OF REVIEW
¶ 11. When considering the decisions of a chancellor on appeal, this Court has a limited standard of review. McNeil v. Hester, 753 So.2d 1057(¶ 21) (Miss.2000). “The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony.” Fisher v. Fisher, 771 So.2d 364(¶ 8) (Miss.2000). The chancellor is the fact-finder and is charged with the obligation of resolving disputes between the parties and likewise is the sole arbiter of the credibility of the witnesses. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). A chancellor’s findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or where it is determined that the chancellor applied an erroneous legal standard.' Tinnin v. *368 First United Bank, 570 So.2d 1193, 1194 (Miss.1990). If the chancellor’s findings are supported by substantial, credible evidence in the record, this Court will not reverse. Id.
ANALYSIS
I. DID THE CHANCELLOR ERR BY . FINDING THAT APPELLANT MARGARET LANG PROCURED HER OFFICE OF TRUST THROUGH UNDUE INFLUENCE AND FURTHER ERRED BY REMOVING HER AS TRUSTEE?
¶ 12. Margaret asserts that the chancellor erred in finding that she procured her office of trust through undue influence and further erred by removing her as trustee of the Annie Mae Loyd Trust. Margaret points this Court to what she asserts are conflicting statements made by the chancellor regarding when a fiduciary relationship between Margaret and Annie Mae Loyd began. The chancellor stated in his findings of fact and conclusions of law that “there is substantial and ample evidence that a confidential relationship existed between Mrs. [Margaret] Lang and Annie Mae Loyd as of May 24, 1993.” In his judgment, however, the chancellor stated that Margaret entered into a fiduciary relationship with Annie Mae Loyd on May 24, 1993. In his order denying Margaret’s motion to alter or amend, the chancellor stated that “the trust agreement, viewed in light of the manner in which Mrs. Lang utilized it, was procured through undue influence, overreaching, and a breach of the position of trust which Mrs. Lang occupied with her aged and ill mother.” Margaret points out that the chancellor did not revoke the entire trust document but instead only removed Margaret as trustee. According to Margaret, if the trust was procured through undue influence, the chancellor erred in not revoking the document.
¶ 13. Edith asserts that the judgment removing Margaret clearly articulates that she was removed for violations of her fiduciary duty and that undue influence in the procurement of the trust is not relevant to the case at bar. Therefore, any statement made by the chancellor in an order or ruling which does not affect the substantial rights of the parties is harmless error under Rule 61 of the Mississippi Rules of Civil Procedure. We agree with the Edith. The question at bar is whether or not the chancellor erred in removing Margaret Loyd Lang as trustee for the Annie Mae Loyd Trust. The chancellor based his decision on the actions of Margaret as trustee of the Annie Mae Loyd Trust. This issue is without merit.
II. DID THE CHANCELLOR ERR BY FINDING THE TEMPORARY SUPPORT TO BE UNREASONABLE?
¶ 14. Margaret asserts that the chancellor erred in finding the temporary support to be unreasonable, since the same chancellor later approved $1,200 per month as payment for care of Annie Mae Loyd. Lang’s assertion of error, however, is factually incorrect because it does not reflect the chancellor’s judgment or the order denying motion to alter or amend or, in the alternative, for a new trial. The chancellor determined that the method of payment and other actions by Margaret were improper and were in fact conversion, and he required Margaret to return the money to the trust. Margaret was required to demonstrate by clear and convincing evidence that the transaction was not the product of undue influence. Murray v. Laird, 446 So.2d 575, 578 (Miss.1984).
*369 ¶ 15. At trial, Margaret testified that she took trust money from the sale of timber along with money from the trust bank accounts and deposited those funds into her personal account. She purchased a certificate of deposit with those funds in her name and held them for three years. She then sold the remaining trust assets to her husband, Clyde Lang. In November 1998, she redeemed the certificate of deposit early and paid herself $1,200 per month for the entire year for care of her mother. The court would later authorize $1,200 per month in December 1999 with agreement from all parties. The chancellor found that Margaret had not proven by clear and convincing evidence that the payments made in November 1998 were not the product of undue influence. The only evidence presented was the testimony of Margaret. At best, the decision in November 1998 was made by Margaret and Annie Mae Loyd. However, both parties agree that by 1998 Annie Mae suffered from dementia.
¶ 16. “Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner’s right.” Terrell v. Tschirn, 656 So.2d 1150, 1153 (Miss.1995) (quoting Walker v. Brown, 501 So.2d 358, 361 (Miss.1987)). “The intent required is not necessarily a matter of conscious wrongdoing.” Walker, 501 So.2d at 361. The chancellor determined that Margaret converted to her personal use $14,400, or twelve months’ care at $1,200 per month, and that she did not provide clear and convincing evidence that the transaction was made in good faith, full knowledge, and with consent of the parties. The chancellor is to be afforded substantial deference, and we will only reverse if we determine that his findings were against the substantial weight of the credible evidence. Brown v. Brown, 817 So.2d 588, 591(¶ 7) (Miss.Ct.App.2002). The substantial weight of the evidence supports the chancellor’s decision. This issue is without merit.
III. DID THE CHANCELLOR ERR BY FINDING APPELLANT LANG TO HAVE VIOLATED HER FIDUCIARY DUTIES AS TRUSTEE?
¶ 17. Margaret asserts that the chancellor erred in finding her to have violated her fiduciary duties as trustee, since the trust gave her authority to deposit funds in her own name and the sale of property to her husband was for good and valuable consideration. Margaret fails to cite to any legal authority in support of this assignment of error; therefore, this Court is not obligated to consider it on appeal. Pickering v. Indus. Masina I Traktora, 740 So.2d 836, 848(¶ 55) (Miss.1999). Nevertheless, we will review the merits of this issue.
¶ 18. The chancellor’s decision to remove Margaret Lang as trustee of the Annie Mae Loyd Trust was based upon Margaret’s misuse of trust assets. Margaret admits that she was in a fiduciary relationship from and after May 24, 1993. Mississippi case law provides that the existence of a confidential or fiduciary relationship gives rise to a presumption of undue influence. Estate of Volmer v. Volmer, 832 So.2d 615, 619(¶12) (Miss.Ct.App.2002) (citing Croft v. Alder, 237 Miss. 713, 725, 115 So.2d 683, 687 (1959)). The burden of going forward with the proof then shifts to the grantee/beneficiary to prove by clear and convincing evidence: (1) good faith on the part of the grantee/beneficiary; (2) grantor’s full knowledge and deliberation of his actions and their consequences; and (3) advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator’s interest. Murray, 446 So.2d at 578.
*370 ¶ 19. The chancellor found that Margaret violated her fiduciary duty to.Annie Mae by depositing funds of Annie Mae in the amount of $26,302.42 in her own name and holding them for more than three years, by paying herself $14,400 of the funds for care of Annie Mae, and by conveying all of the Annie Mae Loyd Trust real property to her husband, Clyde Lang. Margaret argues that she was able to prove by clear and convincing evidence that she acted in good faith by adding .a $60,000 addition to her home, purchasing a vehicle to transport Annie Mae, and taking her into her home. Margaret also asserts that the testimony of attorney Scott Farnsworth proved Annie Mae Loyd’s full knowledge and deliberation pf her actions and Farnsworth provided independent advice to Annie Mae. However, in- regard to the sale of land, the chancellor found.that the sale to Margaret’s husband went against the intention Annie Mae expressed in the last will and trust to leave her property to her surviving children in equal shares. By selling the property to her husband, Margaret had ended up with all of Annie Mae Loyd’s land while the rest of Annie Mae’s children ended up with none without voluntarily having given up their interest.
¶ 20. The chancellor heard the testimony, considered the facts, and after applying the applicable law determined that Margaret had violated her fiduciary duties and should be removed as trustee. The substantial weight of the evidence supports the chancellor’s decision. This issue is without merit.
rv. DID THE CHANCELLOR ERR BY ORDERING AN ACCOUNTING?
¶ 21. Margaret asserts that the chancellor erred in ordering an accounting. However, the chancellor is vested with the authority to oversee and supervise the administration of a trust. Reedy v. Johnson’s Estate, 200 Miss. 205, 213, 26 So.2d 685, 688 (1946). Having determined that Margaret had violated her fiduciary duties as trustee, it is within the chancellor’s authority to order an accounting in order to determine what assets remain in the estate. “Counts of equity have all remedial powers necessary to the particular case, except those that, are expressly forbidden by law.” Hall v. Wood, 443 So.2d 834, 843 (Miss.1983). The chancellor did not act outside of his authority. Absent a clear abuse pf discretion, we will not interfere, with the. chancellor’s exercise of authority. Id.
V. DID THE CHANCELLOR ERR BY CANCELING THE WARRANTY DEED FROM APPELLANT MARGARET LANG TO APPELLANT CLYDE LANG?
¶ 22. Margaret asserts that the chancellor erred in cancelling the warranty deed from her as trustee of the Annie Mae Loyd Trust to her husband, Clyde Lang. Margaret asserts that by selling the property at or above fair market value, the sale was an arms length transaction and as trustee she was vested with the authority to sell the property at any time. The chancellor canceled the warranty deed from Margaret Lang to her husband Clyde Lang because they failed to overcome the presumption of invalidity which attached to this transaction. It was Margaret and Clyde’s burden at trial to overcome the presumption of invalidity by producing “clear and convincing evidence” that this transaction, was not the product of “undue influence.” As stated above, the chancellor heard the testimony at trial and determined that Margaret and Clyde failed to overcome this presumption of undue influence, and the sale went against the expressed intention that the children inherit the land in equal shares. Margaret and *371 Clyde fail to demonstrate that the chancellor used the wrong legal standard or that his determination was an abuse of discretion. This issue is without merit.
VI. DID THE CHANCELLOR ERR BY DISMISSING APPELLANT CLYDE LANG’S COUNTER-COMPLAINT FOR SLANDER OF TITLE AND ASSESSING COURT COSTS TO THE APPELLANTS?
¶ 23. Margaret and Clyde assert that the chancellor erred in dismissing Clyde’s counter-complaint for slander of title and assessing court costs to them. The chancellor’s judgment held that the Langs failed to overcome the presumption of undue influence regarding the conveyance of land from the trust to Clyde. By finding the sale was invalid, the deed was invalidated and the land returned to the trust. Since the court found that Lutz had a valid right to have her case decided, filing a lis pendens notice cannot be slander of title. Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 117 (Miss.1987). The action for slander of title was therefore rendered moot when the chancellor entered his judgment setting aside the conveyance which was the subject of the slander of title suit. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.