# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00904-COA

**CHAD ELLIS EVERETT**                                                    **APPELLANT**

**v.**

**MELISSA B. EVERETT BURCHFIELD**                                 **APPELLEE**

DATE OF JUDGMENT:                06/04/2014
TRIAL JUDGE:                          HON. ROBERT Q. WHITWELL
COURT FROM WHICH APPEALED:   LAFAYETTE COUNTY CHANCERY
                                       COURT
ATTORNEY FOR APPELLANT:        MONA T. PITTMAN
ATTORNEYS FOR APPELLEE:        TARA B. SCRUGGS
                                       LAWRENCE L. LITTLE
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        GRANTED APPELLEE FULL PHYSICAL
                                       CHILD CUSTODY AND AMENDED
                                       PROPERTY-SETTLEMENT AGREEMENT
                                       TO ALLOW APPELLEE TO CLAIM ALL
                                       CHILDREN AS TAX DEPENDENTS
DISPOSITION:                        AFFIRMED IN PART; REVERSED AND
                                       RENDERED IN PART - 12/08/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., ISHEE AND JAMES, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In 2013, Chad Everett and Melissa B. Everett Burchfield divorced after seven years

of marriage.  They have four children together.  Pursuant to their child-custody agreement,

Everett and Burchfield shared joint custody of the children by alternating weeks of custody.

The parties' property-settlement agreement reflected this arrangement by allowing Everett

to claim two children as dependents on his tax forms and Burchfield the other two.  In 2014,

Everett filed a petition to modify the child-custody agreement and sought sole physical custody of the children. Burchfield filed a response and a counterclaim also seeking full physical custody of the children. The Lafayette County Chancery Court held a hearing on the merits and determined that the evidence warranted a change in physical custody. The chancellor granted full physical custody to Burchfield and altered the parties' property-settlement agreement to allow Burchfield to include all four children as dependents on her tax forms. Aggrieved, Everett appeals. We affirm the chancellor's judgment with regard to custody. However, the parties' property-settlement agreement was not properly before the chancery court for amendment. Accordingly, we reverse and render the chancellor's ruling as to Burchfield's right to claim all four children as dependents for tax purposes.

## STATEMENT OF FACTS

¶2. Everett and Burchfield were married on March 18, 2006. Burchfield brought two children into the marriage – Hannah, born in 1998, and Hailey, born in 2000. Following his marriage to Burchfield, Everett adopted Hannah and Hailey. Everett and Burchfield have two biological children together – Natalie, born in 2003, and Wyatt, born in 2009.

¶3. In July 2013, the parties' divorce was finalized through the entry of a child-custody agreement and a property-settlement agreement. Everett and Burchfield agreed to joint custody of the children in the child-custody agreement, with each party alternating weeks of custody. By extension, the property-settlement agreement allowed for each party to list two of the children as dependents on their respective tax forms.

¶4. Following the divorce, Burchfield remarried. Her husband, John Burchfield, has

2

custody of his two children, Wesley and Madelyn, from a previous marriage. The Burchfields soon purchased a home that includes four bedrooms and three bathrooms. They continue to reside in the home at present and pay a monthly mortgage on the property.

¶5. The record indicates that Everett lives in a home purchased by his mother. The record also reflects that Everett's mother pays the monthly mortgage on the property. In addition, Everett's mother loaned him a substantial sum of money for him to purchase another home in Clarksdale, Mississippi. In general, Everett's mother plays a substantial financial role in his life. In addition to the two homes mentioned above, Everett's mother also owns the liquor store that Everett has managed for approximately a year and a half. From this job Everett gains income and health insurance. However, the familial ties also offer him flexibility at work. He testified that he usually works from about 8:00 in the morning until 2:00 in the afternoon, five days a week.

¶6. Burchfield serves as a clinic-operations director at Clarksdale HMA Physician Management, which is located approximately an hour and fifteen minutes away from the Burchfields' home. She has worked there for over seven years. Her employer affords her flexibility in her work hours to accommodate the children's school schedules. Burchfield leaves work at 4:00 p.m. to pick up Wyatt, the youngest child, from school every day by 5:15 p.m. The other children ride the bus to and from school. John ensures that the three older children reach the bus safely in the mornings before dropping off Wyatt at school. In the afternoons, the older three children arrive home just under an hour and a half before Burchfield returns with Wyatt. Nonetheless, the record indicates that Burchfield has family

3

nearby who can transport the children to after-school activities or check on them, if needed, before Burchfield arrives home.

¶7.     The record indicates that the post-divorce relationship between Everett and Burchfield has been less than amicable since Burchfield married John. There is evidence that in addition to showing hostility toward John, Everett has instructed the children to dislike John. The record also shows that Everett has promoted tension by failing to co-parent with Burchfield. Everett's solution to a parenting disagreement with Burchfield appears to be threatening to call the authorities. Nonetheless, Everett repeatedly violated rules that Burchfield set in place, mostly for the older children. While numerous examples were littered throughout the record, several were quite notable. Everett allows the children to have social-media accounts, despite Burchfield's prohibition on them. He allows the older child to date an older boy from out of town, of which Burchfield does not approve. He purchased motorcycle lessons for one of the children without informing Burchfield, and then proceeded to offer to buy the child a motorcycle if she would live with him permanently.

¶8.     Despite Everett's parental misgivings, he claims that the Burchfields' home is unfit for the children. In this vein, Everett has accused Burchfield of sexual misconduct. This accusation arose out of an incident when, around 12:30 at night, the Burchfields had sexual relations in their marital bed while Wyatt was asleep on the floor in the room. Though Wyatt was unaware of the circumstances, Hailey, unbeknownst to the Burchfields and without permission, had snuck out of bed to watch television in a room adjacent to the master bedroom and heard the incident.

4

¶9. Another incident occurred in 2014 wherein Wesley, John's son, offered to show Hailey his penis in exchange for her showing him her breasts. Hailey reported the incident to a school counselor two days later. The counselor called the Burchfields, who immediately met with the counselor, Hailey, and Wesley. Wesley was quickly placed in counseling, and strict privacy rules were set in place for all of the children at the Burchfields' home.

¶10. Immediately thereafter, Everett had the children during his week of custody. At the end of the week, he returned three of the children to the Burchfields' home but refused to return Hailey. After a heated discussion arose between Everett and Burchfield in the presence of one or more of the children, the authorities were called to help resolve the matter. Two days later, Everett returned to the home with authorities to serve a restraining order on John. The restraining order claimed that John had inappropriately touched the children and that he had threatened to kill Everett. Everett demanded that John and Wesley leave the Burchfields' home until the matter was resolved. John and Wesley complied.

¶11. At a trial on the restraining order, the evidence showed that there was no basis for the restraining order. Most notably, Hannah and Hailey admitted that John had never sexually abused them. To the contrary, the evidence supported the theory that Everett had prompted Hannah and Hailey to falsely accuse John of sexual abuse. Hence, the restraining order was dissolved.

¶12. The chancellor conducted an in-depth three-day trial on the matter of custody. He studied numerous pieces of evidence and heard the testimonies of nine witnesses, including Everett, Burchfield, John, Hannah, and Hailey. In his ruling from the bench, he reviewed

5

each of the *Albright*[1] factors in detail and discussed the parties' circumstances, including the incidents mentioned above. Ultimately, the chancellor determined that a material change in circumstances had occurred such that it was in the best interest of the children to live solely with Burchfield. In so doing, the chancellor awarded Burchfield the right to claim all four children as dependents for tax purposes, thus altering the parties' property-settlement agreement.

¶13. On appeal, Everett asserts that the chancellor erred in awarding sole physical custody of the children to Burchfield. Specifically, Everett claims that the chancellor lacked evidence to support his finding of a change in circumstances or a change that adversely affected the children. Furthermore, Everett argues that the chancellor erred in his analysis of the *Albright* factors. Finally, Everett challenges the chancellor's modification of the parties' property-settlement agreement with respect to dependents claimed by each party on tax documents.

## DISCUSSION

¶14. "When considering the decisions of a chancellor on appeal, this Court has a limited standard of review." *In re Conservatorship of Estate of Loyd*, 868 So. 2d 363, 367 (¶11) (Miss. Ct. App. 2003) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000)). "We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong [or] clearly erroneous, or applied an erroneous legal standard." *Taylor v. Bell*, 87 So. 3d 1134, 1137 (¶6) (Miss. Ct. App. 2012) (citing *Buford v. Logue*, 832 So. 2d 593, 600 (¶14) (Miss. Ct. App. 2002)).

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

6

## I. Child-Custody Modification

### A. Material Change in Circumstances Adversely Affecting the Children

¶15. In order to modify a child-custody agreement, a movant must prove the following: "(1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Powell v. Powell*, 976 So. 2d 358, 361 (¶11) (Miss. Ct. App. 2008) (citing *Giannaris v. Giannaris*, 960 So. 2d 462, 467-68 (¶10) (Miss. 2007)). A chancellor must weigh the totality of the circumstances in determining whether a material change in circumstances has occurred. *Id*. "The chancellor is in the best position to make this determination because it is his role to ascertain whether witnesses and evidence are credible and the weight to give to each." *Martin v. Stevenson*, 139 So. 3d 740, 748 (¶26) (Miss. Ct. App. 2014) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1014 (¶37) (Miss. 2003)).

¶16. Everett first claims that the chancellor failed to articulate a material change in circumstances that adversely affected the children in question. We disagree. The chancellor first summarized many of the notable instances in the record that reflect Everett's unwillingness to cooperate and co-parent with Burchfield. Included in the chancellor's discussion was Everett's instruction to the children to dislike John and the incident wherein Everett falsely accused John of threatening to kill him and then coerced Hannah and Hailey into falsely accusing John of sexual abuse. The chancellor also referenced the numerous parenting disconnects between Everett and Burchfield. Then, the chancellor stated the following:

7

> [T]he [c]ourt . . . finds that there's been a material change in circumstances related to the children, and the [c]ourt specifically cites instances like the [restraining order] matter, creating a distrust with John, encouraging a dislike for [Burchfield] and John, and not having proper discipline with the girls, especially the older two . . . .

Additionally, in the written order issued after the bench ruling, the chancellor reiterated:

> [A] material change in circumstances has occurred in that the [f]ather has attempted to foster in the minor children a dislike and distrust for [the] [m]other and her husband . . . and that the [f]ather has not exercised proper discipline over the minor children. This [c]ourt further finds that this material change in circumstances has had an adverse effect on the parties' minor children.

A simple reading of the bench ruling and the order shows that the chancellor made a clear finding that a material change in circumstances had occurred that adversely affected the children.

¶17. Everett challenges the chancellor's failure to fully articulate exactly why the changes were adverse to the children. However, the supreme court has stated that "no rigid test or magic words should stand in the way of the chancellor as he or she acts to improve the child's welfare through a modification of custody." *Riley v. Doerner*, 677 So. 2d 740, 745 (Miss. 1996). In *Riley*, the supreme court noted:

> [W]e take this opportunity to clarify that a chancellor is *never* obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's best interest above all else. . . . The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of an individual case.

*Id*. at 744-45.

¶18. In the instant case, we do not find that the chancellor failed to articulate why the

8

circumstances at hand were adverse to the children. It is evident from the record and the chancellor's opinion that Everett's attitude and actions toward the Burchfields created a hostile environment that was adverse to the children's well-being. It was clear from the chancellor's opinion that because of this, he deemed a change in custody to be in the best interest of the children. As such, we do not find reversible error in the chancellor's determination that a material change in circumstances existed that adversely affected the children. This issue is without merit.

### B. *Albright* Analysis

¶19. Everett next attacks the chancellor's *Albright* analysis. The case of *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983), provides the requisite test for determining child custody in custody disputes. Ultimately, "the polestar consideration in child custody cases is the best interest and welfare of the child." *Id.* at 1005.

¶20. The *Albright* test weighs the following factors:

> Age[,] . . . health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school[,] and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.

*Id.*

¶21. First, Everett asserts that the chancellor should have provided more insight into why Burchfield was favored with regard to the health and sex of the children. However, since

9

three of the four children are female, we find that the chancellor's determination that Burchfield was "slightly favored" is self-explanatory.

¶22. Second, Everett challenges the chancellor's finding of neutrality for continuity of care. His only support for this notion is an allegation that the children resided in Everett's home for a long period of time following the divorce. Nonetheless, this fact is unsubstantiated. The record simply does not support Everett's contention. Instead, it would appear that custody continued to alternate between the parties following the divorce. While the children may have resided with Everett for a very short time frame while Burchfield moved houses following the divorce, this was insignificant and certainly not reflective of Everett's allegedly sustained continuity of care.

¶23. Third, Everett claims that the chancellor improperly considered Burchfield's spiritual input into the children's lives when determining that Burchfield was favored in parenting skills. While the chancellor did discuss Burchfield's encouragement of the children's spiritual involvement in church, the record is also sufficient to support other factors the chancellor discussed in his bench ruling. As mentioned previously, Everett refuses to provide continuity in discipline policies with phone usage and social-media accounts. When the oldest child is in Everett's care, he allows her to date a boy of whom Burchfield does not approve. The record also indicates that Everett purchased motorcycle-riding lessons for his teenage daughter without Burchfield's knowledge and then offered to buy the child a motorcycle in exchange for living with him. We find this to be more than sufficient to support the chancellor's determination in this factor.

10

¶24. Fourth, Everett states that the chancellor misapplied the factor relating to the employment of the parents and the responsibility of that employment. Everett points to the chancellor's description of Burchfield's job as "important to that company" and "more responsible." Everett goes on to say that "[i]nstead of focusing on which party had the more impressive job, the [c]hancellor should have focused upon which party's job least impacted their ability to provide the children with supervision and care."

¶25. A review of the chancellor's bench ruling shows that the chancellor did, in fact, analyze the parties' abilities to care for the children in relation to their employment. The chancellor stated the following:

> In this case, I think it's interesting . . . that a custodial parent's work schedule is not a material change in circumstances if the child is well cared for and supervised. That's cited at *Mixon v. Sharp*, 853 So. 2d 834 (Miss. Ct. App. 2003), which I think is applicable to . . . Burchfield in this case. She and her husband drive an hour to an hour and ten minutes to Clarksdale every day. And the fact that she doesn't get home until 5:15 or 5:30 to pick up Wyatt is not to be used against her.

Later in the chancellor's ruling, he mentioned several descriptive elements of each party's job in order to show why Burchfield's job appeared to be more stable than Everett's. However, contrary to Everett's contention, the chancellor did not favor Burchfield in this factor simply because her job had more importance. Rather, it appears he favored Burchfield because, while her job requires longer working hours than Everett's, her job is more stable than his. Also, her working hours do not interfere with the care of the children. Hence, the longer working hours were deemed inconsequential in the analysis. The chancellor's finding in this respect is fully supported by both the record and his opinion.

11

¶26. Fifth, Everett challenges the chancellor's determination that Burchfield was favored on the moral-fitness factor. The chancellor again discussed Burchfield's consistent encouragement of spirituality in the children's lives. However, Everett notes the incident wherein he says Burchfield committed sexual misconduct. Everett claims this was not considered by the chancellor in his decision. To the contrary, the chancellor did acknowledge this incident in his analysis. Nonetheless, even if the incident were a negative factor against Burchfield, it would only make that factor neutral to both parties, at best. For the sake of argument, if the factor were to favor Everett, Burchfield would still be favored in an overall *Albright* analysis. Hence, even if error were committed here, it would be harmless.

¶27. Finally, Everett argues that the chancellor erred by finding in favor of Burchfield with regard to the stability of each parent's home environment and job. He contends that the chancellor erred by saying that Burchfield's home is "paid for" and that Everett is in debt to his mother for his finances. The record shows that the Burchfields pay a monthly mortgage for their home. Everett, on the other hand, lives in a home that is paid for monthly by his mother. Everett's job is at the discretion of his mother since she owns the liquor store he manages. His health insurance is furnished through his job and, hence, afforded by his mother. Also, Everett owns a home in Clarksdale that he purchased with $90,000 loaned to him by his mother. As stated by the chancellor, Everett "has a debt that's owed to his mother that she could call on him at any time to put him in instability of his employment or home environment . . . ." The record supports this statement. As such, while the chancellor

12

improperly stated that the Burchfields' house is "paid for," we see no reversible error in his determination that Burchfield has a more stable home environment and employment. The issues regarding the chancellor's *Albright* analysis are meritless.

## II.     Property-Settlement-Agreement Modification

¶28.    Everett's final issue on appeal relates to the parties' property-settlement agreement. After awarding sole physical custody of the children to Burchfield, the chancellor also gave Burchfield the right to claim all four children as dependents for tax purposes. This altered the parties' property-settlement agreement, which had previously allotted two children to be claimed as dependents by each party. Everett asserts that because neither party requested this change in their pleadings, the issue was not properly before the chancery court.

¶29.    A property-settlement agreement "may be incorporated in the judgment [for divorce], and such judgment may be modified as other judgments for divorce." Miss. Code Ann. § 93-5-2(2) (Rev. 2013). The supreme court has reiterated that once a judgment of divorce has been issued, a court may, "on petition, change the decree, and make from time to time such new decrees as the case may require." *Townsend v. Townsend*, 859 So. 2d 370, 377 (¶22) (Miss. 2003) (quoting Miss. Code Ann. § 93-5-23 (Rev. 1994)).

¶30.    Here, each party's right to claim two children as dependents for tax purposes is granted in the property-settlement agreement, not the child-custody agreement. Since a petition was not made to the chancellor to review and modify the property-settlement agreement, it was not properly before the chancery court. In order to change the property-settlement agreement to reflect the parties' new custodial arrangement, Burchfield must

13

specifically petition the chancery court to review and alter the property-settlement agreement.

Accordingly, we reverse and render the chancellor's alteration of the property-settlement agreement.

¶31.   **THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.  ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**